PEOPLE v HARRINGTON

Docket No. 55136. Argued October 10, 1974 (Calendar No. 17). Resubmitted August 25, 1975.—Decided January 27, 1976.

Robert Harrington and a companion were arrested on a charge of shoplifting and transported to the police station in the rear seat of a police car. On the way police officers observed defendant squirming and fidgeting with his hands behind his back. Later the officers removed the rear seat and two small packages were found. Two metal caps in one of the packages contained a minute residue of heroin. The other package contained several hypodermic needles, a book of matches, part of an eye-dropper and the cotton end of a Q-tip. Defendant was tried in the Jackson Circuit Court, Gordon W. Britten, J., and convicted of unlawful possession of a narcotic drug. The Court of Appeals reversed, adopting the rule that illegal possession is established if it can reasonably be inferred that the amount possessed was the remnant of a larger usable amount. On retrial, Harrington was again convicted. The Court of Appeals, Lesinski, C. J., and J. H. Gillis and O'Hara, JJ., denied application for leave to appeal (Docket No. 17217). Defendant appeals. *Held:*

1. The "usable amount" and "remnant of a usable amount" tests are rejected.

2. The view in most jurisdictions is that possession of any quantity of proscribed narcotic is sufficient to support conviction, but also that knowledge of the presence of the substance is an essential element of the offense. The quantity need only be enough to permit proper identification of the narcotic. This application of the statute effectively carries out the legislative intent to deter narcotics traffic while safeguarding individual rights.

3. The Legislature in its attempt to guard the public health

---

REFERENCES FOR POINTS IN HEADNOTES

[1–9, 12–14] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 21, 47 (supp).
What constitutes "possession" of a narcotic drug proscribed by § 2 of the Uniform Narcotic Drug Act. 91 ALR2d 810.
[10, 11, 13] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
[11] 16 Am Jur 2d, Constitutional Law §§ 144–151, 154.

and safety has proscribed the use, possession and sale of heroin and there is no qualifier that it is possession with intent to use that is forbidden; therefore, it cannot be said that it was the legislative intent to outlaw possession of only a usable amount of narcotics. The "usable amount" rule presents difficulties of administration. It establishes a standard so vague as to be unfair to both the defendant and the state. If taken to mean an amount usable by the defendant, it would require testimony about the defendant's habit, which is close to or within the constitutionally prohibited area regarding the defendant's status as an addict. If the standard is established by expert testimony, it is variable from case to case, leading to an uneven administration of justice.

4. The "remnant of a usable amount" test also presents difficulties of administration. It allows examination into the defendant's status as an addict to show that he used the usable amount, or requires the testimony of an eyewitness.

5. Where there is an amount of narcotic visible to the naked eye, regardless of how much it is, there is a sufficient amount to permit prosecution for unlawful possession of a narcotic drug. The question whether it is possible to sustain a conviction if the amount involved is not visible is left open.

6. There was sufficient evidence to support a finding of fact that the narcotic drug and implements belonged to defendant.

Affirmed.

T. G. Kavanagh, C. J., would reverse the defendant's conviction. The "remnant of a usable amount" test is deficient in that possession of the remnant is not possession of the usable amount. More basically, the statute prohibiting possession of a narcotic drug is an exercise of the police power in the area of public health. To proscribe the possession of an amount of heroin insufficient for use can in no way be justified as promoting public health. Were the statute construed to proscribe the possession of an amount of heroin less than a usable amount it would be void. The possession of an amount of heroin insufficient for the use commonly intended will not support a conviction of unlawful possession of a narcotic drug.

Levin, J., dissented on the grounds that the Legislature did not intend to proscribe possession of a mere residue of a controlled substance which cannot be used or distributed for use and which can cause no harm. Introduction of evidence of track marks on the defendant's arm should not be allowed as circumstantial proof that the defendant used the heroin and that it was once part of a larger amount in the defendant's

possession, because the risk that a defendant will be convicted because the jury believes he is an addict outweighs the probative value of track-mark evidence.

33 Mich App 548; 190 NW2d 343 (1971) overruled.

### OPINION OF THE COURT

1. DRUGS AND NARCOTICS—HEROIN—USABLE AMOUNT RULE.

The "usable amount" and "remnant of a usable amount" tests used in prosecutions for possession of a small residue of heroin are rejected (MCLA 335.153, 335.341).

2. DRUGS AND NARCOTICS—POSSESSION—KNOWLEDGE.

The view in most jurisdictions is that any amount is sufficient to make out the offense of unlawful possession of a narcotic drug, and also that knowledge of the presence of the substance is an essential element of the offense and it is only when these two requirements are present that defendant may be found guilty of possession; this application of the statute effectively carries out the legislative intent to deter narcotics traffic while safeguarding individual rights.

3. DRUGS AND NARCOTICS—HEROIN—POSSESSION—SALE—USABLE AMOUNT.

The Legislature in its attempt to guard the public health and safety has proscribed the use, possession, and sale of heroin and there is no qualifier that it is possession with intent to use that is forbidden; therefore, it cannot be said that it was the legislative intent to outlaw possession of only a usable amount of narcotics (MCLA 335.153).

4. DRUGS AND NARCOTICS—POSSESSION—USABLE AMOUNT—REMNANT OF USABLE AMOUNT.

Both the "usable amount" test and the "remnant of a usable amount" test for possession of narcotics are more difficult for courts to administer than the "any amount" test: the "usable amount" test results in a vague or variable standard of amount, and both may require testimony very close to the constitutionally prohibited area of the defendant's status as an addict.

5. DRUGS AND NARCOTICS—POSSESSION—HEROIN.

A defendant found in possession of bottle caps which contained heroin residue apparent to the naked eye was in violation of the statute which makes it a felony if any person not having a license shall possess or have under his or her control any narcotic drug (MCLA 335.153).

6. Drugs and Narcotics—Quantity—Possession.

Where there is an amount of narcotic visible to the naked eye, regardless of how much it is, there is a sufficient amount to permit prosecution for unlawful possession of a narcotic (MCLA 335.153).

7. Drugs and Narcotics—Heroin—Possession—Evidence.

There was sufficient evidence to support a finding of fact that heroin belonged to defendant where defendant and another passenger were transported in a patrol car, the police made a practice of examining the patrol car after every use, after removing the rear seat of the patrol car police officers discovered a package containing two metal bottle caps with a thin film of what was later identified as heroin and the evidence was found to the right of where the defendant had been sitting with the other passenger seated on his left.

Dissenting Opinion

Kavanagh, C. J.

8. Drugs and Narcotics—Heroin—Quantity—Usable Amount.

*The possession of an amount of heroin insufficient for the use commonly intended will not support a conviction of violation of the statute prohibiting possession of a narcotic drug (MCLA 335.153).*

9. Drugs and Narcotics—Possession—Remnant—Usable Amount.

*The rule that possession of less than a usable amount of heroin will support a conviction of possession of a narcotic drug if it can reasonably be inferred that the amount possessed was the remnant of a larger, usable amount is not sound, because to concede that the remnant was from a larger, usable amount is not to concede that possession of the remnant is possession of the larger, usable amount (MCLA 335.153).*

10. Drugs and Narcotics—Possession—Statutes—Police Power— Public Health.

*The statute prohibiting possession of a narcotic drug without a license is an exercise of the police power in the area of public health and it has legitimacy and effect only insofar as it can be applied to the accomplishment of a proper function in the area of promoting public health (MCLA 335.153).*

11. Statutes—Construction—Validity—Constitutional Law.

*The Supreme Court is constrained to construe statutes so as to preserve constitutional validity.*

12. DRUGS AND NARCOTICS—POSSESSION—STATUTES—CONSTRUCTION—
    VALIDITY.

> To proscribe the possession of an amount of heroin insufficient for
> use can in no way be justified as promoting public health, and
> if the statute prohibiting the possession of narcotic drugs were
> to be construed to prohibit possession of less than a usable
> amount, it would be void (MCLA 335.153).

### DISSENTING OPINION

### LEVIN, J.

13. DRUGS AND NARCOTICS—HEROIN—POSSESSION—STATUTES.

> The purpose of the statute proscribing possession of narcotic
> drugs is to protect the public from the harm claimed to be
> caused by the use of drugs; possession of a minuscule amount
> which cannot be used or distributed for use and which can
> cause no harm is not within the intendment of the statute and
> is not a criminal offense.

14. DRUGS AND NARCOTICS—POSSESSION—EVIDENCE—TRACK MARKS.

> The risk that a defendant will be convicted because the jury
> believes he is a drug addict outweighs the probative value of
> track-mark evidence and is far too great to allow introduction
> of such proofs to show circumstantially that the defendant
> possessed and used a larger amount of a drug than the residue
> found in his possession.

*Frank J. Kelley,* Attorney General, *Robert A. Der-
engoski,* Solicitor General, *Bruce A. Barton,* Prose-
cuting Attorney, and *James M. Justin,* Assistant
Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Roger L. Wot-
ila* and *Stuart M. Israel),* for defendant on appeal.

WILLIAMS, J. *(to affirm).* Defendant was prosecuted
for possession of a small residue of heroin, visible to
the naked eye, in the form of a hard powdery sub-
stance on the interior of a bottle cap. Defendant
sought to avoid conviction by asking this Court to con-
strue this state's former statute making it a felony for
"any person not having a license * * * [to] possess or
have under his control any narcotic drug" to require

possession of a "usable amount". We affirm defendant's conviction on these facts and reject the "usable amount" and the Court of Appeals "remnant of a usable amount" tests.

## I—Facts

February 21, 1969, defendant Robert Harrington and his companion Mary Jean Cox were arrested in Jackson on a charge of shoplifting. Before being searched, they were placed in the rear seat of a patrol car and brought to the police station. At trial, the two arresting officers testified that they had observed Harrington through the rear view mirror and that he was fidgeting with his hands behind his back. Both officers saw nothing in defendant's hands. Harrington was seated on the right side of Ms. Cox, about eight to ten inches away from her. One officer testified that he did not know whether defendant or Ms. Cox was right or left-handed.

After delivering their two suspects to the police station, the officers returned to the car and searched it. After removing the rear seat, they discovered two small packages, one consisting of several hypodermic needles, a book of matches, part of an eye-dropper and the cotton end of a Q-tip. The second package contained two metal bottle caps with a thin film of what was later identified as heroin inside.

Although the film was only a residue of the narcotic drug involved, that residue was readily apparent to the naked eye. The most direct testimony applicable to our test involved the police chemist:

"*Q.* \* \* \* Are you able to see residue at the present time?

"*A.* There is some residue, yes. \* \* \*

"*Q.* And, what do you mean when you use the word 'residue'?

"*A*. It is just a hard powdery substance, which is on the interior of the cap."

The relationship of the evidence's location to defendant was described by the testifying officer as:

"*A*. It would be on his—more or less to the right of him, right in the center of the vehicle, where he was positioned in the seat. It was in back of him on his right side."

This, of course, removes it from Mary Cox who was on defendant's left.

The officer who uncovered the packages testified that he handled them, did not consider dusting them for fingerprints, and did not know if any fingerprint processing had been performed on these exhibits. A qualitative, but no quantitative analysis was performed on the heroin residue.

Defendant was tried and convicted by a jury of unlawful possession of a narcotic drug.[1] He appealed, raising only one issue: "Is the possession of a modicum of heroin, insufficient in amount to be used for the purpose commonly intended, a violation of the statute?" *People v Harrington,* 33 Mich App 548, 549; 190 NW2d 343 (1971). In reversing and remanding for a new trial, the Court of Appeals recognized this as a question of first impression in Michigan, rejected the two tests used in this country, and adopted a new one.

---

[1] "Any person not having a license * * * who shall possess or have under his or her control any narcotic drug shall be deemed guilty of a felony * * * . MCLA 335.153; MSA 18.1123.

This has been repealed and replaced by the Controlled Substances Act of 1971, including MCLA 335.341; MSA 18.1070(41) which provides in relevant part:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act."

"Research has not disclosed any Michigan authority on the question of the quantity of the narcotic drug required to constitute possession as proscribed by the statute. California requires the quantity to be sufficient for the drug's common use, *People v Leal* (1966), 64 Cal 2d 504 (50 Cal Rptr 777, 413 P2d 665). Texas has adopted a similar rule, *Greer v State* (1956), 163 Tex Crim 377 (292 SW2d 122). The majority of the states that have passed on the question have held that the quantity possessed is immaterial. *State v Dodd* (1965), 28 Wis 2d 643 (137 NW2d 465); *Schenher v State* (1956), 38 Ala App 573 (90 So 2d 234); *Mickens v People* (1961), 148 Colo 237 (365 P2d 679); *People v Norman* (1962), 24 Ill 2d 403 (182 NE2d 188); *State v McDonald* (1966), 92 NJ Super 448 (224 A2d 18); *People v Young* (Mo, 1968), 427 SW2d 510; *Haley v State* (1969), 7 Md App 18 (253 A2d 424).

"Without local precedent, this Court is free to adopt the minority or majority view or to reject both. Our choice should be governed by our judgment of what is the most reasonable, practical and readily applicable rule for efficient law enforcement without undue encroachment on individual rights. It is our judgment that the minority view may restrict efficient law enforcement; a quantity of narcotics sufficient for its common use is not necessarily a concomitant of illegal possession. On the other hand, the majority view that the quantity possessed is immaterial is so broad a view that it may tend to encourage infringement of individual rights.

"It is our judgment that a reasonable compromise between the minority and majority views has been proposed in the article 'Drugs and the Criminal Law', 12 Crim Law Quarterly 254 (July, 1970). Arthur C. Whealy there suggests that the facts and circumstances in each case be viewed to determine if it can be reasonably inferred that the quantity of narcotic actually discovered is but a remnant of a larger, usable amount. If that inference can be made, illegal possession is established." 33 Mich App 548, 549–550.

At the subsequent trial, this test was applied. The jury found defendant guilty and he was sentenced to three to ten years in prison.

Application for delayed appeal was denied by the Court of Appeals July 13, 1973. We granted leave January 28, 1974. 391 Mich 769.

## II—THE RELEVANT STATUTES

The charge was laid under 1952 PA 266, § 3, being MCLA 335.153; MSA 18.1123, which reads as follows:

"Any person not having a license * * * who shall possess or have under his or her control any narcotic drug shall be deemed guilty of a felony * * * ." MCLA 335.153; MSA 18.1123.

Both the former statutes under which this conviction occurred and the new Controlled Substances Act include possession as one of a number of offenses relating to traffic in narcotic drugs. Thus, the former statute MCLA 335.152; MSA 18.1122 made the sale and manufacture of such drugs by nonlicensees a felony; MCLA 335.153; MSA 18.1123, *supra,* fn 1, made possession a felony; and MCLA 335.154; MSA 18.1124 made unlawful use a misdemeanor.

None of these statutes specified that any amount must be involved before the prohibition became relevant.

Under the Controlled Substances Act, delivery, possession and use remain offenses, with penalties depending on the type of substance involved. MCLA 335.341; MSA 18.1070(41). Under the new statutory scheme, the amount of substance is relevant if it is included in schedule 3, MCLA 335.318; MSA 18.1070(18), for example, but as to heroin, a schedule 1 substance, MCLA 335.314; MSA 18.1070(14), it and other opium derivatives are proscribed "when the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation". In the absence of such specifics in the former statute,

combined with the specific language prohibiting sale of "any narcotic drug", possession of "any narcotic drug" and use of "any narcotic drug", it is difficult to see how the requirement of a particular amount can properly be added to this legislative language. This logic is the approach taken by most states.

### III—THE MAJORITY TEST FOR POSSESSION

The view in most jurisdictions is that possession of any quantity of proscribed narcotic is sufficient to support conviction.[2] Possession is the gravamen of the offense charged. *State v Young,* 427 SW2d 510, 513 (Mo, 1968).

Support for this approach is found in the language of the Uniform Narcotic Drugs Act, adopted with various modifications by 47 states including Michigan, the District of Columbia and Puerto Rico. Am Jur 2d, Desk Book, Doc. No. 129. Section 2 of the Act was the basis for the statute under which defendant was charged.[3] Knowledge or intent to possess is not part of the specific language of this statute.[4]

Therefore, it is necessary, according to this view, that qualitative analysis be performed on the unknown substance in order to determine *what* it is, but quantitative analysis is unnecessary to determine *how much* of the proscribed substance there is. *State v Humphreys,* 54 NJ 406, 410–411; 255 A2d 273, 275 (1969). *Peachie v State,* 203 Md 239; 100 A2d 1 (1953); *State v McDonald,* 92 NJ Super 448, 452; 224 A2d 18,

---

[2] *E.g., Schenher v State,* 38 Ala App 573; 90 So 2d 234 (1956); *State v Young,* 427 SW2d 510 (Mo, 1968); *Haley v State,* 7 Md App 18; 253 A2d 424 (1969); *State v Dodd,* 28 Wis 2d 643; 137 NW2d 465 (1965).

[3] Thus, for example, § 4 of the New Jersey statute, also based on § 2 of the Uniform Act, provides:

"[I]t shall be unlawful for any person to * * * possess * * * any narcotic drug except as authorized by this chapter." *State v Reed,* 34 NJ 554; 170 A2d 419; 91 ALR2d 797 (1961).

[4] This is changed under the new statute, *supra,* fn 1.

20 (1966). Thus, marijuana debris about the size of a dime found in defendants' pockets was sufficient to prove possession, *Fagin v People,* 174 Colo 540, 542; 484 P2d 1216, 1217 (1971), as was 3 milligrams scraped from three gelatin half capsules, *State v Young,* 427 SW2d 510 (Mo, 1968), or the narcotic in six or seven cigarette butts from handmade cigarettes 80 to 90 percent marijuana, *State v Phelps,* 8 Or App 198, 200; 493 P2d 1059, 1060 (1972), or .00457 ounce of marijuana in a bamboo pipe, *Commonwealth v Walker,* 226 Pa Super 149, 155; 313 A2d 351, 354 (1973).

The most usual criticism directed against this test is that courts applying it may be convicting individuals who may not have known they possessed the substance they were accused of possessing. See, *e.g., People v Leal,* 64 Cal 2d 504, 509–510; 50 Cal Rptr 777, 781; 413 P2d 665, 669 (1966). A closer examination of the cases, however, indicates that this is an inaccurate characterization.

It is black letter law that "[i]t is essential to the defendant's guilt that he knew that he possessed * * * narcotics". 3 Wharton, Criminal Law and Procedure, p 298. Thus, for example, even while rejecting defendant's proposed usable amount test, the Court in *State v Young,* 427 SW2d 510 (Mo, 1968), found that the record supported "the test of actual or construction possession" which "is whether 'the defendant was aware of the presence and character of the particular substance, and was intentionally and consciously in possession of it' ". 427 SW2d 510, 513. *See also, e.g., Judd v State,* 482 P2d 273, 280 (Alas, 1971); *State v Faircloth,* 181 Neb 333, 337; 148 NW2d 187, 190 (1967).

Therefore, while the general view is that any amount is sufficient to make out the offense of possession, the general view is also that knowledge of the presence of the substance is an essential element of

the offense. Katz, *Possession of Narcotic Drugs Under State and Federal Statutes,* 25 U Miami L Rev 306, 310 (1971); 91 ALR2d 810, 821.[5] It is only when these two requirements are present that an individual may be found guilty of possession, even by applying the majority rule.

For example, in *Peachie v State,* 203 Md 239, 243; 100 A2d 1, 2 (1953), the Court found intent, and therefore knowledge, by focusing on the use of the drug. Since evidence indicated the defendant had just injected himself with a narcotic, "it necessarily follows that he had possession and control of the instrument and its contents at the time of the injection, as well as an intent and purpose to administer the drug".

A better approach was that of the Supreme Court of Alaska, in *Judd v State,* 482 P2d 273, 280 (Alas, 1971), which explained that "where the facts of a case show knowing possession of illegal drugs, it is unnecessary that a usable quantity be found so long as a sufficient quantity of the drug is found to permit proper identification".

The most direct approach has been to find that the microscopic or chemical analysis is used:

"not to determine the *presence* of the substance, but to identify it. So long as qualitatively the substance seized is marijuana [or any other narcotic], the statute does not prescribe any minimum amount which must be possessed. And it follows that this Court cannot be asked to specify what quantity of a contraband substance is sufficient to invoke criminal sanctions, so long as the presence of the substance is readily determined." *State v Humphreys,* 54 NJ 406; 255 A2d 273 (1969).

Such application of the statute prohibiting posses-

---

[5] For cases *contra, see, e.g., Broic v State,* 79 So 2d 775 (Fla, 1955); *State v Boggs,* 57 Wash 2d 484; 358 P2d 124 (1961).

sion, we believe, effectively carries out the legislative intent to deter narcotics traffic while, at the same time, safeguarding individual rights.

## IV—THE USABLE AMOUNT TEST

The usable amount rule recommended by my Brother the Chief Justice has arisen in several jurisdictions in response to objections to the "any amount" test. These Courts emphasize, first, that the *scienter* requirement implicit in the crime of possession cannot be met if the amount of the substance is so small that its presence can be detected only through chemical or other scientific analysis.[6]

The second part of the argument for this position is that it more properly interprets the legislative purpose. Since the Legislature wanted to curtail the use of narcotics, quantities too small to be used do not pose the sort of societal danger contemplated.[7] See, *e.g., State v Moreno,* 92 Ariz 116, 120; 374 P2d 872,

[6] In reversing a conviction for possession of heroin where the substance was found in the form of crystalline incrustations on spoons, a state in which it could remain indefinitely, the California Supreme Court wrote, in *People v Leal,* 64 Cal 2d 504, 509; 50 Cal Rptr 777, 780–781; 413 P2d 665, 668–669, citing *People v Aguilar,* 223 Cal App 2d 119; 35 Cal Rptr 516 (1963):

"Any nonscientifically trained person, albeit an addict, observing the spoons * * * would have been unable to detect the presence of heroin since neither powder nor liquid remained. It is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the presence of the narcotic. Guilt or innocence on a charge of illegal possession may not be determined solely by the skill of the forensic chemist in isolating a trace *of the prohibited narcotic in articles possessed by the defendant. As* forensic science, measuring devices and techniques improve, smaller and smaller amounts of residue are required for the chemist to detect the presence of the narcotic. The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant."

[7] "If this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed." *Edelin v United States,* 227 A2d 395, 398–399 (DC Ct App, 1967).

875 (1962); *Greer v State,* 163 Tex Crim 377; 292 SW2d 122 (1956).

While we do not accept the approach of the Wisconsin Court which rejected this test because, "A more liberal interpretation favorable to drug addicts and those illegally dealing in narcotics cannot reasonably be given", *State v Dodd,* 28 Wis 2d 643, 651; 137 NW2d 465, 469 (1965), the rule does present serious difficulties. When viewed according to our criteria, this rule would be more difficult to administer than the majority view.

No court which has adopted this standard has indicated what a usable amount would be. It is an amount usable "under the known practices of narcotic addicts". *State v Moreno,* 92 Ariz 116, 120; 374 P2d 872 (1962), and is not a quantity that is useless for consumption or sale, *People v Thomas,* 246 Cal App 2d 104, 111; 54 Cal Rptr 409, 414 (1966). Therefore, while it is clear that it is not a minute or microscopic quantity, it is unclear just what it is, a standard which is so vague as to be unfair to both defendant and the state which is responsible for its administration.

Courts have been unable to specify the exact amount prohibited where the Legislature has not done so. For us to invent the forbidden amount in the light of this legislative silence would be impermissible judicial legislation. Where the Legislature has done so, as in sections of the Controlled Substances Act, for us to select other than these legislatively-designated benchmarks would be equally impermissible.

If the test were to be applied to refer to an amount appropriate for defendant's use it would require testimony involving defendant's habit, bringing us close to if not within the constitutionally prohibited area regarding defendant's status as an addict. *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962).

If the test were applied so that expert testimony admissible at trial would establish the standard, the result could well differ from courtroom to courtroom and expert to expert, and create the kind of uneven administration of justice we must avoid.

The legislative policy is obviously to stop the horrendous traffic in narcotics which has led to the unfortunate addiction of so many people, and the unfortunate waste of human life. Thus, the Legislature in its attempt to guard the public health and safety has proscribed the use, possession and sale of the illegal substance. There is no legislative qualifier that it is possession with intent to use that is forbidden. Therefore, we cannot say it was the legislative intent to outlaw possession of only a usable amount of narcotics.

For these reasons we must reject defendant's request to apply the usable amount test to narcotics convictions.

## V—THE REMNANT OF A USABLE AMOUNT TEST

The Court of Appeals presented its new standard for determining possession as an attempt to facilitate efficient law enforcement without undue encroachment on individual rights. While its "remnant of a larger, usable amount" approach may have seemed attractive as a matter of theory, the problems of administration as manifested in defendant's trial indicate that this goal was not quite achieved.

This test undeniably allows examination into the defendant's status as an addict, an area forbidden by *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962).

At Harrington's trial, the prosecution first attempted to apply the test by asking the expert from the Michigan Health Department Crime Detection Division:

"*Q.* [C]an you form a conclusion as to whether or not what you call a residue is the remnant of what was a larger quantity in these caps?

"*A.* I can merely testify as to what I actually know is in that cap. As far as what may have been in there I can't say."

Obviously, that testimony did not do it. Therefore, the only evidence upon which the jury could have found that the substance found in the back of the patrol car was the residue of a larger quantity was the testimony of a police officer, admitted over defendant's objection,[8] that he had seen fresh "tracks" on defendant's left arm.

Even if such evidence were to be tortuously construed as showing that defendant was not an addict but had merely used heroin, it is still extremely prejudicial. Further, such needle tracks show only that he or she had possibly injected heroin or another substance at some recent time. They do not show that defendant used the *particular* substance at issue.

Another possible way of proving the substance was a remnant of a usable amount would be by testimony

---

[8] The court permitted this line of questioning, explaining:

"*The Court:* I will agree with Mr. Biewend that under the decision the Court of Appeals rendered in Mr. Harrington's appeal of the prior trial here, setting forth that the People must show, and the Court must instruct that the residue that of any narcotics is found must be shown it was part of a useable quantity, then whether or not the Defendant might have used it in the past becomes a circumstance for the jury to consider as to whether or not there was a useable quantity. The Court of Appeals in giving to Mr. Harrington here in one respect in the sense that is taken away in the other cause, there are under prior laws it was why it would not go into the matter of tracks under the facts presented here thus far, but under the Court of Appeals decision, and it is a circumstance to be considered by the Jury, as to whether or not there are indications that the Defendant was a user, which would go to whether or not there was a usable quantity, in the possession prior to the arrest in the picking up of the paraphernalia for use in narcotics. So, under that Court of Appeals decision the Court would allow to go into what the testimony—whether or not there were tracks, indication of recent use of narcotics by Mr. Harrington."

of an eyewitness. The obvious difficulty of obtaining such testimony is but another reason why administration of this approach is so difficult.

## VI—CONCLUSION

In this case defendant was found in possession of bottle caps with heroin residue apparent to the naked eye. We hold that such possession is in violation of MCLA 335.153; MSA 18.1123 which makes it a felony if "[a]ny person not having a license * * * shall possess or have under his or her control any narcotic drug".

This is not the kind of case where scrapings are taken from the inside of a coat pocket, or a plastic box on a dresser, *People v Pippin,* 16 AD2d 635; 227 NYS2d 164 (1962). Although the evidence was part of paraphernalia which, arguably, might have been the only thing defendant thought he was hiding, the white encrustation was there for him to see. Therefore, the *mens rea* threshold was successfully crossed by the prosecution.

Where there is an amount of narcotic visible to the naked eye, regardless of how much it is, there is a sufficient amount to permit prosecution. We leave open the question of whether it is possible to sustain a conviction if the amount involved is not visible.

As for defendant's argument that possession was not established, we find that there was sufficient evidence to support a finding of fact that the narcotic drug and implement belonged to defendant. The police made a practice of examining their patrol car after every use. Therefore, the goods must have been left by one of the two passengers, Harrington or Ms. Cox. The evidence was found to defendant's right. Ms. Cox was seated on his left.

The conviction is affirmed.

COLEMAN and LINDEMER, JJ., concurred with WIL-
LIAMS, J.

FITZGERALD and RYAN, JJ., took no part in the deci-
sion of this case.

KAVANAGH, C. J. *(dissenting)*. The question pre-
sented by this appeal is whether the possession of an
amount of heroin insufficient for the use commonly
intended will support a conviction for violation of
MCLA 335.153; MSA 18.1123.

We hold it will not.

The defendant and a companion were arrested on a
charge of shoplifting and transported to the police
station in the rear seat of a police car. On the way the
police officer observed defendant in the rear view mir-
ror squirming and fidgeting with his hands behind his
back. Later the officer removed the rear seat and two
small packages were found. Two metal caps in one of
the packages contained a minute residue of heroin.

The other package contained paraphernalia de-
scribed as a "heroin kit".

Defendant was tried and convicted by a jury of un-
lawful possession of a narcotic drug. The Court of Ap-
peals reversed the conviction and ordered a retrial.[1]
The defendant was again convicted and that convic-
tion was affirmed by the Court of Appeals.

In its opinion reversing defendant's first conviction
the Court of Appeals pointed out that there is a split
of authority on this question. California and Texas
require that the quantity be sufficient for the drug's
common use. See *People v Leal*, 64 Cal 2d 504; 413
P2d 665; 50 Cal Rptr 777 (1966), and *Greer v State*,
163 Tex Crim 377; 292 SW2d 122 (1956). A majority of
the other states hold that if the substance possessed

---

[1] *People v Harrington*, 33 Mich App 548; 190 NW2d 343 (1971), *lv den*
385 Mich 775 (1971).—REPORTER.

can be identified any quantity will support conviction.

Acknowledging that the minority view may impede efficient law enforcement, and the majority view may encourage infringement of individual rights, the Court of Appeals adopted as a compromise the rule suggested by Arthur C. Whealy of the Ontario Bar in his article *Drugs and Criminal Law* in 12 Crim Law Quarterly 254 (July 1970). He reported that some Canadian courts have held that if the facts and circumstances of the particular case will support a reasonable inference that it is the remnant of a larger, usable amount, possession is established so as to warrant a conviction.

We are not persuaded by the reasoning.

Even to concede that the remnant is from a usable amount is not to concede that possession of a remnant is possession of the usable amount. Possession of the hide is not possession of the horse.

But apart from any logical deficiency in such a rule we cannot accept it for a more basic reason.

This statute is an exercise of the police power in the area of public health. It has legitimacy and effect only insofar as it can be applied to the accomplishment of a proper function in the area of promoting public health.

To proscribe the possession of an amount of heroin insufficient for use can in no way be justified as promoting public health.

We are constrained to construe statutes so as to preserve this constitutional validity. If we were to adopt the view that possession of any amount of heroin less than a usable amount was proscribed by this statute we would be duty bound to hold the statute void.

Accordingly we hold the proof of possession of less

than a usable amount of heroin as here will not support defendant's conviction.

In light of our disposition of this issue we do not reach the other matters urged on appeal.

The conviction is set aside and defendant discharged.

LEVIN, J. *(dissenting).* I am unable to join in the Court's disposition of this case.

I agree with the Chief Justice that the Legislature did not intend to proscribe possession of a mere residue of a controlled substance.

The purpose of the statute is to protect the public from the harm claimed to be caused by the use of drugs. Possession of a minuscule amount which cannot be used or distributed for use and which can cause no harm is not within the intendment of the statute and is not a criminal offense.

The people sought to establish possession of a larger amount of heroin circumstantially with evidence of track marks to show that the defendant used the heroin. The prosecutor conceded that without such evidence the people could not prove that the remnant was part of a larger amount or that a larger amount was ever in Harrington's possession.

I also find myself in agreement with Justice WILLIAMS regarding the dangers of evidence suggestive of a defendant's status as an addict. See *Robinson v California,* 370 US 660; 82 S Ct 1417; 8 L Ed 2d 758 (1962). I would go further, however, and require the people to prove violation of the narcotics laws without trackmark evidence. The risk that a defendant will be convicted because the jury believes he is an addict outweighs the probative value of track-mark evidence and is far too great to allow introduction of such proofs.*

---

* *See* McCormick, Evidence (2d ed), § 185, pp 438–439.