**STATE of Utah, Plaintiff and Respondent,**

v.

**Adren Ray WARNER, Defendant and Appellant.**

**No. 890226–CA.**

Court of Appeals of Utah.

Feb. 27, 1990.

Elliott Levine, West Valley City, for defendant and appellant.

R. Paul Van Dam and Barbara Bearnson, Salt Lake City, for plaintiff and respondent.

Before BENCH, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Defendant Adren Ray Warner appeals his conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1986). We affirm.

## FACTS

On October 29, 1988, Warner was a passenger sitting in the front seat of an automobile driven by Vickie Courtney, when Utah Highway Patrolman John Simpson stopped the vehicle for a speeding violation on Interstate 80 in Summit County. Officer Simpson asked Courtney for her driver's license and registration. While Warner searched the glove box for Courtney's registration, Officer Simpson noticed a twelve-pack of beer on the floor beneath Warner's legs. Officer Simpson then went around to the passenger side of the car and requested the beer. Upon opening the

---

door, he observed a cold cup holding an open can of beer wedged between the passenger seat and the door. Officer Simpson requested Warner's identification and issued him a citation for the open container of alcohol. A local warrant check revealed an outstanding warrant for Warner from the Summit County Circuit Court. Officer Simpson then took Warner into custody and transported him to the Summit County jail in Officer Simpson's car. Courtney voluntarily followed them to the jail.

While conducting a booking search at the jail, Officer Simpson found a small brown vial in Warner's front shirt pocket. Although the vial initially appeared empty, Officer Simpson, upon further investigation, discovered a white powdery substance caked around the upper edge of the vial just under the cap. Officer Simpson believed the substance was cocaine. Warner testified that he either found the vial or a friend gave it to him and that, as part of his rock collecting hobby, he planned to fill the vial with gold dust. The State's witnesses testified that Warner initially denied knowing from where the vial came.

After booking Warner, Officer Simpson went outside the building and informed Courtney that he was going to search her vehicle. In addition to searching the vehicle, he also searched Courtney's purse and her pockets, but found no illegal substance. Officer Simpson then searched Warner's jacket, which was in the back seat of the vehicle and found a razor scraper, called a widget, with a white paper bindle tucked into the edge in a pocket of the jacket. Officer Simpson opened the bindle and found a white powdery substance. Warner denied knowledge of the bindle, claiming that he lent the jacket to a friend who might have left the bindle in his jacket.

A crime lab analysis revealed that the crusted white substance on the vial and the powdery substance in the bindle were both methamphetamine. At trial, the State's chemist admitted that the quantity of methamphetamine found in the vial was insufficient to cause any physical effect on a person.

On March 20, 1989, at Warner's bench trial, the court denied Warner's motion to suppress the evidence seized from his jacket and found him guilty of possession of a controlled substance.

On appeal, Warner claims that the court erred in (1) determining that the residue of methamphetamine found on the vial was sufficient to convict him of possessing a controlled substance under Utah Code Ann. § 58-37-8(2)(a)(i) (1986), and (2) denying his motion to suppress as evidence the methamphetamine found in his jacket on grounds that it was the product of an illegal search.

## ANALYSIS

Interpretation of a statute poses a question of law. *Bonham v. Morgan*, 788 P.2d 497, 499 (1989) (per curiam); *State v. Chindgren*, 777 P.2d 527, 529 (Utah Ct. App.1989). A trial court's conclusions of law are reviewed for correctness and are not given special deference. *Bountiful v. Riley*, 784 P.2d 1174, 1174 (1989); *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1378 (Utah 1987).

Section 58-37-8(2)(a)(i) states that it is unlawful "for any person knowingly and intentionally to possess or use a controlled substance, unless it was obtained under a valid prescription or order or directly from a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this subsection."

Warner argues that since section 58-37-8(2)(a)(i) fails to specify the quantity of controlled substance necessary for a conviction, the amount possessed must be sufficient to cause a physical effect on a person, citing *People v. Johnson*, 5 Cal.App.3d 844, 85 Cal.Rptr. 238 (1970); *People v. Leal*, 64 Cal.2d 504, 50 Cal.Rptr. 777, 413 P.2d 665 (1966); and *Beutler v. State*, 88 Nev. 707, 504 P.2d 699, 700 (1972). These cases employ what is referred to as the "useable amount test," which provides that the charge of criminal possession of an illegal substance is sustainable only where the contraband is of a sufficient quantity to

be susceptible of use as a narcotic. *See also State v. Moreno*, 92 Ariz. 116, 374 P.2d 872, 875 (1962); *State v. Bonney*, 427 A.2d 467, 470 (Me.1981) (statute required a "useable amount"); *Pelham v. State*, 164 Tex.Crim. 226, 298 S.W.2d 171, 173 (Tex. Crim.App.1957). The rationale generally advanced for the useability requirement is two-fold: (1) that a useable quantity must be required to meet the scienter element of the crime of possession; and (2) that quantities too small to be used do not pose the type of danger the legislature contemplated. *People v. Harrington*, 396 Mich. 33, 238 N.W.2d 20, 25 (1976); *State v. Forrester*, 29 Or.App. 409, 564 P.2d 289, 290–91 (1977).

The Utah Supreme Court, in *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872 (1964), flatly rejected the useability test. The court stated:

[The] contention that the trial court erred in refusing to instruct the jury that, in order to convict, the amount of narcotic drug possessed must be found to be useable has no merit. *The determinative test is possession of a narcotic drug, and not useability of a narcotic drug.*

*Id.* at 875 (emphasis added) (footnote omitted).[1] The court's rejection of the useability requirement is consistent with the majority of jurisdictions. *Harrington*, 238 N.W.2d at 23–25; *Hampton v. State*, 498 So.2d 384, 386 (Miss.1986); *People v. Mizell*, 72 N.Y.2d 651, 536 N.Y.S.2d 21, 22–23, 532 N.E.2d 1249, 1250–51 (1988).

*Winters* avoided determining, however, whether there is some minimum amount of illegal substance below which a conviction could not be affirmed. The court stated that the key in prosecuting for unlawful possession of narcotics is proving that "the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character." *Winters*, 396 P.2d at 874. In *Winters*, because the court found the evidence sufficient to justify the jury's conclusion that defendant had knowledge of the presence and narcotic character of the drug in his possession, the court expressly declined to determine whether a particular quantity of narcotics is necessary to sustain a conviction for possession of a narcotic drug. *Id.*[2] The court acknowledged, however, that "several courts have held that *no particular quantity* of narcotics is necessary to sustain a conviction for possession of a narcotic drug." *Id.*[3]

Warner does not argue in this appeal that the State failed to prove he exercised control over the drug in the vial with knowledge of its presence and narcotic character, or that a particular minimum quantity of methamphetamine was necessary to prove the person "knowingly and intentionally" possessed the drug sufficient to sustain the conviction; instead, he narrowly contends only that the statute implies a "useable amount" requirement. Under *Winters*, we reject Warner's narrow argument and find that the trial court did

1. The court relied on the statutory language: "It shall be unlawful for any person to ... possess ... any narcotic drug" found in Utah Code Ann. § 58–13a–2 (1953). This has been repealed by the Utah Controlled Substances Act of 1971, ch. 145, § 8. Under the Act, it is still "unlawful for any person knowingly and intentionally to possess ... *a* controlled substance." Utah Code Ann. § 58–37–8(2)(a)(i) (1986) (emphasis added).

2. The quantity of a drug may be a factor in determining that it was possessed for sale rather than for personal use. *State v. Bankhead*, 30 Utah 2d 135, 514 P.2d 800, 803 (1973).

3. Even in jurisdictions that advance the majority view that any amount of illegal substance is sufficient to make out the offense of possession, the prosecution must still prove the essential element of knowledge. *People v. Harrington*, 396 Mich. 33, 238 N.W.2d 20, 24 (1976). Some jurisdictions advocate that since knowledge may be proven by circumstantial evidence, possession alone of a trace or minute quantity of contraband infers knowledge. *See e.g., State v. Siirila*, 292 Minn. 1, 193 N.W.2d 467, 473 (1971), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2503, 33 L.Ed.2d 336 (1972); *People v. Mizell*, 72 N.Y.2d 651, 536 N.Y.S.2d 21, 24, 532 N.E.2d 1249, 1252 (1988). However, other courts have found, to the contrary, that possession of a minute amount of illegal drugs alone, is insufficient to justify an inference of knowledgeable possession. *See e.g., State v. Theel*, 180 Colo. 348, 505 P.2d 964, 965–66 (1973) (en banc); *People v. Hunten*, 115 Mich.App. 167, 320 N.W.2d 68, 70 (1982) (per curiam); *Sheriff, Clark County v. Benson*, 89 Nev. 160, 509 P.2d 554, 556 (1973).

not err in interpreting section 58–37–8(2)(a)(i) to not require possession of a sufficient quantity of illegal substance to cause a physical effect.

Our finding above precludes the need to address Warner's claim that the methamphetamine seized from his jacket was the product of an illegal search which, consequently, should have been suppressed as evidence. Even if the search of his jacket was illegal, the methamphetamine found in the vial, which Warner concedes was legally seized, was sufficient to sustain a conviction under section 58–37–8(2)(a)(i). The trial court itself noted that its decision to deny Warner's motion to suppress was a close call, but that it made little difference because the controlled substance found in the vial was sufficient to convict Warner. We, therefore, affirm the trial court's decision.

BENCH and BILLINGS, JJ., concur.