STATE of Utah, Plaintiff and Appellee,

v.

Dennis Richard VIGH, Defendant and Appellant.

No. 930204–CA.

Court of Appeals of Utah.

March 15, 1994.

---

Glen T. Cella (argued), King and King, Kaysville, for defendant and appellant.

Jan Graham, Atty. Gen., and Marian Decker, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Dennis Richard Vigh appeals his convictions for possession of marijuana with intent to distribute and for possession of cocaine, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv), (2)(a)(i) (Supp.1993). Because Vigh committed these two offenses within 1000 feet of a school, his convictions were enhanced to second degree felonies under Utah Code Ann. § 58–37–8(5)(a), (5)(c) (Supp.1993). Vigh also appeals his conviction for possession of marijuana without tax stamps affixed, a third degree felony, in violation of Utah Code Ann. § 59–19–105, (1990). Vigh specifically challenges the trial court's denial of his motion to suppress evidence. We affirm.

## FACTS

On June 16, 1992, Detective Gary Haws of the Davis County Metro Narcotics Strike Force sought a search warrant for Vigh's mobile home in Clearfield, Utah. Detective Haws based his probable cause affidavit on information from a confidential informant and on independent verification of that information.

The affidavit contained the following information provided by a confidential informant. The informant had telephoned Detective Haws and reported Vigh was selling marijua-

na and cocaine. The informant provided Vigh's address and described Vigh's vehicle to Detective Haws. Within the previous ten days the informant had observed marijuana, cocaine, and attendant drug paraphernalia in Vigh's residence as well as marijuana in Vigh's vehicle. The informant was knowledgeable about marijuana because of prior use. The informant also told Detective Haws that Vigh had been in the crawlspace underneath Pam Tucker's house in Sunset, Utah. Tucker was Vigh's girlfriend. The informant believed that Vigh had stashed drugs and money at Tucker's residence.

Detective Haws, assisted by Detective Dave Nance, confirmed the informant's assertion that Vigh resided at the Clearfield Trailer Park with a drive-by observation and with the park manager. Detective Haws also confirmed the informant's description of Vigh's vehicle with Bountiful City Police. Detective Haws went to the Tucker residence in Sunset, Utah and conducted a consensual search. Detective Haws found three to four pounds of marijuana in the crawlspace of the house. Detective Haws also found approximately $12,000 in cash in the master bedroom. Beyond his personal verification of the confidential informant's story, Detective Haws believed the information was reliable because the informant had come forward voluntarily and had received nothing in exchange for the information.

In addition, Detective Haws obtained Vigh's criminal history which showed that Vigh had been convicted of a controlled substance offense in 1986. Detective Haws attached the 1985 search warrant that resulted in Vigh's prior conviction to the probable cause affidavit.

Judge K. Roger Bean of the Layton Circuit Court issued the search warrant as requested by Detective Haws's affidavit. Detectives arrested Vigh based on the contraband discovered at the Tucker residence. Detectives then executed the warrant at Vigh's mobile home and seized approximately one pound of marijuana as well as baggies, scales, and other drug paraphernalia which contained cocaine residue. Vigh's driver's license likewise contained cocaine residue. Investigating detectives also determined that Vigh's mobile home was located within 1000 feet of a school.[1]

Vigh filed several pro se motions, including a motion to suppress evidence seized at the mobile home. The motion to suppress alleged that Vigh's prior criminal history was improperly included in the affidavit in violation of his Fourth, Fifth, and Fourteenth Amendment rights. Vigh retained counsel prior to the hearing on his various pro se motions. At that hearing, the trial court denied the motion to suppress. Looking at the affidavit as a whole, the trial court concluded that it offered a substantial basis from which the magistrate could have found sufficient probable cause to issue the search warrant.

At trial, James Gaskill of the Weber State University Crime Laboratory testified that a white powdery residue visible on the baggies, scales, and Vigh's driver's license was indeed cocaine. The residue, however, was not measurable or quantifiable. Gaskill further testified that the residue could be consumed but that it was likely insufficient to produce a reaction. The investigating detectives also testified that Vigh's mobile home lay within 1000 feet of a school. The detectives' measurement, however, required trespassing across the railroad tracks which run between the school and the mobile home park. Detectives also climbed through holes in the chain link fence surrounding the mobile home park in making the measurement. Having heard this testimony, the jury found Vigh guilty on the three charges and found that Vigh committed the offenses within 1000 feet of a school. Vigh now appeals.

## ISSUES

Vigh's case presents three issues: (1) whether the affidavit sufficiently established probable cause and thus whether the trial court properly denied Vigh's motion to suppress; (2) whether the cocaine residue was

---

1. Vigh concedes that Pioneer Adult Rehabilitation Center is a "school" under Utah Code Ann. § 58-37-8(5) (Supp.1993).

sufficient to sustain Vigh's cocaine possession conviction; and (3) whether the distance supporting the sentence enhancement should have been measured irrespective of physical and legal barriers.

## ANALYSIS

### A. Sufficiency of the Affidavit

■ Vigh contends that the trial court improperly denied his motion to suppress when it concluded that the affidavit established probable cause to issue the warrant that resulted in Vigh's conviction. Vigh asserts that, without his prior criminal history and the attachment of the 1985 warrant, Detective Haws's affidavit is inadequate to establish probable cause. The State responds that the affidavit provides a substantial basis for a finding of probable cause. The State also asserts that Vigh's criminal history was properly included in the affidavit.

■ It is well settled that Utah courts employ the "totality-of-the-circumstances test" articulated in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) to determine the sufficiency of an affidavit supporting a search warrant. *State v. Thurman*, 846 P.2d 1256, 1259–62 (Utah 1993); *State v. Hansen*, 732 P.2d 127, 129–30 (Utah 1987); *State v. Brooks*, 849 P.2d 640, 643 (Utah App.), *cert. denied*, 860 P.2d 943 (Utah 1993); *State v. Purser*, 828 P.2d 515, 517 (Utah App.1992). Probable cause is determined by a magistrate who "make[s] a practical common-sense decision whether, *given all the circumstances set forth in the affidavit* ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)) (emphasis added).

■ We do not review a magistrate's probable cause determination de novo; rather, we simply decide if the "magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *State v. Collard*, 810 P.2d 884, 885 (Utah App.), *cert. denied*, 817 P.2d 327 (Utah 1991). To make that decision, we consider the affidavit "in its entirety," *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985), and pay great deference to the magistrate's determination. *Collard*, 810 P.2d at 886 (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

The instant affidavit contains ten paragraphs. Nine paragraphs recount the confidential informant's information and independent police corroboration of that information. Only one paragraph recounts Vigh's criminal record. We have held that criminal histories are not properly part of probable cause determinations because such determinations center only on the likelihood that evidence of a crime will be found in a particular place. *Brooks*, 849 P.2d at 644; *State v. Potter*, 860 P.2d 952, 956 (Utah App.1993) (concluding fact that local drug agencies investigated defendant and fact that defendant's companion was a convicted drug user, without more, did not establish probable cause).

■ Stale information such as prior convictions cannot be the sole basis for determining that probable cause exists. *See State v. Stromberg*, 783 P.2d 54, 56–57 (Utah App. 1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). The stale facts in Vigh's case, however, were limited to one paragraph and to the attachment of the 1985 warrant. Including this information in the affidavit may have been improper, but it was not fatal.[2] Excise the stale information, and this affidavit remains viable. With the criminal history paragraph deleted and the 1985 warrant removed, the remaining information nonetheless demonstrates that "the issuing magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *Collard*, 810 P.2d at 885.

---

**2.** Vigh relies exclusively on *Brooks*, 849 P.2d at 644 for his contention that including his criminal history proves fatal to the affidavit. Vigh does not seem to recognize, however, that we concluded the *Brooks* affidavit was sufficient to establish probable cause even with the defendant's criminal history omitted. *Id.* at 645.

The remaining facts in the affidavit center on the confidential informant's information and on police corroboration of that information. In their probable cause determinations, magistrates must consider the veracity and reliability of a person supplying information to police officers. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. "[R]eliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information." *Purser,* 828 P.2d at 517. Because the confidential informant here received nothing in exchange for information about Vigh's illegal activities, the magistrate properly assumed that the informant was reliable. "Further buttressing reliability is the detail with which an informant describes the facts set forth in the affidavit and independent corroboration of the significant facts by police." *Id.* Because the confidential informant offered significant details such as the cash and drugs hidden at Tucker's house and because police independently corroborated those details, the magistrate properly determined the confidential informant was reliable.

Viewing the totality of the circumstances, we conclude that even with Vigh's criminal record omitted the magistrate had a substantial basis for finding probable cause and issuing the search warrant. Accordingly, the trial court properly denied Vigh's motion to suppress.

### B. Sufficiency of Residue for Possession Conviction

Vigh also contends the evidence does not support the jury's verdict that Vigh was guilty of cocaine possession. Vigh asserts that because the cocaine residue was neither measurable nor quantifiable he cannot be guilty of possession. The State responds that the standard for possession is neither the amount nor the useability of the drug but rather a defendant's knowledge of the controlled substance's presence.

When examining claims of insufficiency of evidence, we view the evidence and its reasonable inferences in the light most favorable to the jury verdict. *State v. Booker,* 709 P.2d 342, 345 (Utah 1985); *State v. Lemons,* 844 P.2d 378, 381 (Utah App.1992), *cert. denied,* 857 P.2d 948 (Utah 1993). Jury verdicts are reversed only where reasonable minds must have entertained a reasonable doubt that defendants committed the crimes of which they were convicted. *Lemons,* 844 P.2d at 381; *State v. Johnson,* 774 P.2d 1141, 1147 (Utah 1989).

In Utah, "[t]he determinative test is possession of a narcotic drug, and not useability of a narcotic drug." *State v. Winters,* 16 Utah 2d 139, 396 P.2d 872, 875 (1964) (footnote omitted). Furthermore, "the key in prosecuting for unlawful possession of narcotics is proving that 'the accused exercised dominion and control over the drug with knowledge of its presence and narcotic character.'" *State v. Warner,* 788 P.2d 1041, 1043 (Utah App.1990) (quoting *Winters,* 396 P.2d at 874). In *Warner,* we held that a white powdery residue of methamphetamine was sufficient to support a defendant's conviction for possession although the quantity was insufficient to produce a physical effect. *Id.* at 1043–44. We affirmed the possession conviction in *Warner* because the defendant exercised control over the drug "with knowledge of its presence and narcotic character." *Id.* at 1043.

Vigh's case is analogous to the circumstances in *Warner.* The cocaine residue was visible on the baggies, scales, and Vigh's driver's license; however, it was not measurable or quantifiable and was insufficient to produce a physical effect if consumed. Nevertheless, police found the residue inside Vigh's home in the context of drug paraphernalia and in Vigh's personal effects, demonstrating that Vigh both knew of the drug's presence and exercised control over it. *See State v. Fox,* 709 P.2d 316, 319 (Utah 1985) (holding not only knowledge of drug but also intent to exercise control over drug necessary for possession conviction). In addition, the context in which police found the residue indicates not only possession but also distribution. The residue itself is only part of the evidence supporting the possession conviction.[3] The drug residue must be viewed in the context where it is found. *See id.*

---

3. We have affirmed a possession conviction where there was no physical evidence of the drug

Because police found the cocaine residue in the context of drug paraphernalia over which Vigh exercised dominion, we conclude there was sufficient evidence for the jury to find that Vigh controlled the drug with knowledge of its presence and its narcotic character. Accordingly, the jury properly found Vigh guilty of cocaine possession.

### C. Measurement of the 1000 Feet Sentence Enhancement

 Vigh finally contends that sentence enhancement should be measured not by a straight line but by the most direct non-trespassory pedestrian route.[4] Such a measurement between Vigh's mobile home and the school would exceed 1000 feet. The State responds that a straight line method of measurement is the only one consistent with the legislative purpose of the enhancement statute.

The state legislature enacted the penalty enhancement statute, Utah Code Ann. § 58–37–8(5), "to protect the public health, safety, and welfare of children of Utah from the presumed extreme potential danger created when drug transactions occur on or near a school ground." *State v. Moore*, 782 P.2d 497, 503 (Utah 1989). Therefore, the purpose of the sentence enhancement statute is to create a "drug-free zone" around schools and other specified structures "to protect children from the influence of drug-related activity." *State v. Stromberg*, 783 P.2d 54, 60 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). The statute itself is silent as to how the 1000 feet should be measured; moreover, Utah courts have not yet addressed the measurement question.

Utah patterned its sentence enhancement provision after the federal Controlled Substances Penalties Amendments Act of 1984. *Stromberg*, 783 P.2d at 59 n. 3; *see* 21

U.S.C.A. § 860(a) (Supp.1993). Federal case law thus offers direction as we answer the question of how best to effectuate the legislature's purpose when measuring the distance for sentence enhancement. In *United States v. Clavis*, 956 F.2d 1079, 1088 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2979, 119 L.Ed.2d 597 (1992), the court held that "the statutory distance must be measured by a straight line method rather than a pedestrian travel route." Additionally, the court opined that "[t]he way to create a definite and identifiable [drug-free] zone is by extending radii outward around the property on which the school is located." *Id.* Perhaps even more persuasive is *United States v. Watson*, 887 F.2d 980 (9th Cir.1989), where the Ninth Circuit Court of Appeals sensibly reasoned that "[s]chool children are not known for taking what adults may conclude would be the most appropriate routes to and from school. Only a straight line measurement creates a readily ascertainable zone of protection." *Id.* at 981.

For the purpose of sentence enhancement under Utah Code Ann. § 58–37–8(5), we conclude that 1000 feet should be measured in a straight line radius extending outward from the school's or other specified structure's property. The 1000 feet should be measured irrespective of fences, railroad tracks, walls, streams, buildings, roads, and other physical or legal barriers. In short, Utah's sentence enhancement is measured "as the crow flies." Accordingly, the jury properly found that Vigh committed two drug offenses within 1000 feet of a school, and the trial court properly enhanced Vigh's sentences.

### CONCLUSION

The affidavit supporting the search warrant that resulted in Vigh's convictions provided a substantial basis for the magistrate's

---

but only evidence that the defendant had recently smoked marijuana. *Provo City Corp. v. Spotts*, 861 P.2d 437, 442–43 (Utah App.1993) (following *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976)).

4. Vigh characterizes his argument as a sufficiency challenge to the jury's finding that his mobile home lay within 1000 feet of a school. Vigh concedes, however, that, if the distance supporting sentence enhancement is measured by a

straight line, the State clearly showed his offenses took place within 1000 feet of a school. Vigh also concedes that courts have upheld the constitutionality of Utah's sentence enhancement statute. *State v. Moore*, 782 P.2d 497 (Utah 1989); *State v. Stromberg*, 783 P.2d 54, 61 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). Vigh thus raises only the question of how 1000 feet should be measured.

finding of probable cause, even with Vigh's criminal history excised. The trial court therefore properly denied Vigh's motion to suppress. Moreover, the evidence presented at trial was sufficient to support the jury's findings that Vigh possessed cocaine and that Vigh committed the offenses within 1000 feet of a school. The jury thus properly found Vigh guilty of cocaine possession, and the trial court properly enhanced his sentences. Accordingly, Vigh's convictions and their attendant sentence enhancements are affirmed.

GREENWOOD, J., concur.

ORME, J., concurs, except that as to Section A, concurs only in the result.