STATE of Utah, Plaintiff and Appellee,

v.

William H. BABBELL, Defendant and Appellant.

No. 21033.

Supreme Court of Utah.

March 3, 1989.

Rehearing Denied March 23, 1989.

---

1. *State v. Miller,* 709 P.2d 350, 353 (Utah 1985).

2. *State v. Tillman,* 750 P.2d 546, 561 (Utah 1987).

Brooke C. Wells, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Dave B. Thompson, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant William H. Babbell appeals from his jury conviction of two counts of aggravated sexual assault and one count of aggravated kidnapping. He contends that the trial court should have excluded evidence seized pursuant to a search warrant because the warrant was issued without probable cause. We find that there was probable cause to support the warrant and affirm the convictions.

In setting out the facts from the record on appeal, we resolve all conflicts and doubts in favor of the jury's verdict and the rulings of the trial court. *See, e.g.,*

*State v. Verde*, 770 P.2d 116, 117 (Utah 1989); *State v. Booker*, 709 P.2d 342, 345 (Utah 1985). The victim, K., was camping in Millcreek Canyon near Salt Lake City in April of 1985. She and three friends were standing around a campfire in the early morning hours when a pickup truck approached. The driver left the truck and walked up to the campers. He told them he was a police officer investigating a crime in the canyon and asked if they had any alcohol. He then told the campers they would have to leave the canyon and asked to see their identification. After determining that K. was only nineteen years old, he warned the group that K. was violating a curfew and was subject to arrest if she remained in the canyon. He then offered to take her out of the canyon in his truck to a service station at the bottom of the canyon, where she could rejoin her friends, thus avoiding arrest by the other officers purportedly searching the canyon. K. agreed to the proposal and climbed into the truck. As the truck pulled away, the other campers noticed that it was an older model with no bumpers and no license plates. They became suspicious and immediately followed in their car. At the bottom of the canyon, the truck did not turn in at the service station, but instead sped off toward another canyon and eventually raced out of sight of the friends, who then called the police.

The truck's driver took K. to the Dogwood campground in Big Cottonwood Canyon, held a hunting knife to her throat, and ordered her to perform fellatio on him. He then used her coat to restrain her and threatened to kill her if she attempted to escape while he drove down to a service station and then up to Corner Canyon. There, he forced her to disrobe and raped her. He took her wallet, looked at the contents, and warned her that he would kill her and her family if she reported the crimes. He then ordered her to walk to the top of the remote canyon without stopping or looking back. After the truck pulled away, K. walked for some two and one-half hours down to a pay telephone where she called her husband, who contacted the police.

Detective Larry Cazier of the Salt Lake County Sheriff's Department investigated the case. He obtained descriptions of the assailant and his truck from the victim and the other campers. Another officer, Virgil Johnson, suggested to Cazier that the defendant, William Babbell, might be a suspect. Johnson's suspicion was based on the modus operandi of the assailant. A search of motor vehicle records revealed that Babbell owned a truck similar to that described by the witnesses.

Four days after the attack, Cazier and Johnson went to Babbell's home and, from the street, observed a truck in the driveway fitting the description given by the witnesses. The officers then went to the door of the home and, without identifying themselves as police officers, spoke with Babbell's mother. When told that Babbell was not at home but would return, the officers parked down the street to await his return. When Babbell did not return as expected, the officers again went to the house, identified themselves as sheriff's deputies, and explained that Babbell was a suspect. They then obtained the mother's permission to look closely at the truck, but not to enter the cab. They looked in through the truck's windows and saw details that matched the description given by the victim, including a cracked windshield on the passenger side, a printed stick-pin button with the slogan "55 mph sucks" on the visor, yellow-orange seat covers, a cassette player, beverage holders on the dashboard, and a four-wheel-drive shifter on the floor. The officers then left to obtain a search warrant.

The county attorney's office prepared an affidavit of probable cause, sworn to by Cazier. Cazier took the affidavit to the home of Fifth Circuit Judge Michael Burton, who issued a search warrant. The officers returned to Babbell's home and seized a number of items gathered from the truck, another vehicle, a nearby camper, and the residence. Babbell was then arrested and charged with the assault. Babbell filed a pretrial motion to suppress all of the seized items, and at the hearing on that motion, the State stipulated to the

suppression of some of the seized items which had not been described in the warrant or the supporting affidavit. The court refused to exclude several other items, including a long flashlight, three baseball caps, an "O.P." brand T-shirt, three knives, and the "55 mph sucks" button. This ruling is the subject of this appeal.

At trial, the only issue of contention was the identity of the assailant. The victim described the assailant as having brown hair, squinty green eyes, small lips, and tatoos on one arm and as having worn Levis, brown cowboy boots, a white "O.P." T-shirt with blue lettering, and a blue baseball cap. She described a brown pickup truck with an automatic transmission, a four-wheel-drive shifter on the floor, a cracked windshield on the passenger side, no license plates, an in-dash radio-cassette player, wire-rim beverage holders, a "55 mph sucks" button on the driver's visor, and "orangeish" seat covers. She further described cassette tapes and papers that were strewn on the dashboard, a pack of cigarettes, a bottle of "Wondra" brand lotion, a long flashlight, and a hunting knife and case.

Two of the other campers testified, describing both the truck and the assailant. The victim and both of these witnesses identified Babbell's truck from photographs as being the truck used in the crime. The victim and one of the campers made in-court identifications of Babbell as the assailant. The other eyewitness refused to pick out Babbell as the assailant.

Babbell did not take the stand, but he presented an alibi defense through his parents. They testified that he was at home during at least part of the time the assault took place.

The jury acquitted Babbell of the aggravated robbery charge, which was based on the taking of the victim's wallet, but found him guilty of two counts of aggravated

sexual assault, a first degree felony, and one count of aggravated kidnapping, also a first degree felony. *See* Utah Code Ann. §§ 76–5–405, –302 (Supp.1985).

Before this Court, Babbell claims that the items of physical evidence seized under the search warrant and introduced at trial, including the "O.P." T-shirt, the baseball caps, and the knives, should have been suppressed because there was no probable cause for the issuance of the warrant. But Babbell claims that even if the warrant were properly issued, two items—the long flashlight and the "55 mph sucks" button—should have been suppressed because they were not listed in the search warrant as items to be seized. Babbell bases his claims for exclusion of the evidence on the fourth amendment to the United States Constitution. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *State v. Mendoza*, 748 P.2d 181 (Utah 1987); U.S. Const. amend. IV.[1] He further argues that the trial court's failure to exclude the evidence was harmful, rather than harmless, error because absent the challenged evidence, there would have been insufficient evidence to support a guilty verdict. Because we find that no error was committed in admitting the evidence, we do not reach the question of whether the claimed error was harmful.

The first question is whether the search warrant was supported by probable cause. The fourth amendment requires that when a search warrant is issued on the basis of an affidavit, that affidavit must contain specific facts sufficient to support a determination by a neutral magistrate that probable cause exists. *State v. Nielsen*, 727 P.2d 188, 190 (Utah 1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987). The affiant must articulate particularized facts and circumstances leading to a conclusion that probable cause exists. Mere conclusory statements will not suf-

---

**1.** Babbell has also cited the search and seizure provision of our state constitution. *See* Utah Const. art. I, § 14. On several points, Babbell has argued that this state provision requires analysis differing from the analysis required under the fourth amendment. However, Babbell makes the arguments for a different constitutional interpretation only with respect to certain of his claims that we do not reach. Because we reject his threshold argument regarding a lack of probable cause for the search warrant, we do not reach his remaining contentions and, therefore, find it unnecessary to address the requirements of article I, section 14.

fice. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 *reh'g denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). The magistrate's task is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332; *see State v. Espinoza,* 723 P.2d 420, 421 (Utah 1986).

When a search warrant is challenged as having been issued without an adequate showing of probable cause, the fourth amendment does not require that the reviewing court conduct a de novo review of the magistrate's probable cause determination; instead, it requires only that the reviewing court conclude "that the magistrate had a substantial basis for ... [determining] that probable cause existed." *Illinois v. Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see State v. Romero,* 660 P.2d 715, 719 (Utah 1983); *see generally* 1 LaFave, *Search and Seizure* § 3.1(c) (2d ed. 1987) [hereinafter LaFave]. The reviewing court, in conducting that examination, should consider a search warrant affidavit "in its entirety and in a common-sense fashion." *State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985); *see also State v. Hansen,* 732 P.2d 127, 129–30 (Utah 1987) (per curiam) (applying this standard of review). Finally, the reviewing court should pay "great deference" to the magistrate's decision. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)).

■ In this case, Detective Cazier's affidavit provides in relevant part:

The ... affiant ... has reason to believe [t]hat ... in the ... 1971 Chevrolet pickup truck ... dark brown ... [at] 8558 South 3830 West ... there is now certain property or evidence described as:

1. Small revolver ...
2. Hunting knife ...
3. Wondra Lotion
4. Large black flashlight
5. Wallet ...
6. Clothing consisting of white short-sleeved O.P. Brand T-shirt, blue baseball cap

and that said ... evidence ... constitutes evidence of ... the crime of Aggravated Sexual Assault ....

The facts to establish the grounds for issuance of a Search Warrant are:

....

... A statement by [K. describing the crimes].

[K.] described the interior of the vehicle as having orange seat covers, a cracked [windshield], beverage holders on the dashboard, a "55 mph sucks" button on the driver's side visor, and a cassette player in the dashboard.

The 3 other individuals who saw the ... suspect ... describe the truck as a[n] older model Chevrolet 4-wheel drive pickup, dark brown in color, with no front or rear bumpers.

Based on the modus opera[n]di of the suspect and the description of the suspect, Det. Virgil Johnson, Salt Lake County Sheriff's Office, believed the vehicle may belong to William Babbel[1]. *The detectives* drove by the address of the suspect, 8558 South 3830 West, and *noticed a truck* in the driveway *that matched the description.* The suspect's mother, a resident at the address, gave the detectives permission to look at the truck.

....

The victim, [K.], reports that during sex acts forced upon her by the suspect, he used Wondra lotion, which he obtained from the glove box. She also described a 6″ hunting knife, and a small revolver, the both of which suspect placed behind the seat of the pickup truck. She further described his clothing as being a white short-sleeved O.P. brand T–Shirt and as him having wore [sic] a blue baseball cap. She also stated the suspect deprived her of her maroon wallet, with a velcro fastener, containing her identification and credit cards. The suspect used

a large black police-type flashlight during the commission of the offenses.

(Emphasis added.)

Babbell's challenge focuses on the conclusory statement in the affidavit that the truck seen in Babbell's driveway "matched the description" given by the witnesses.[2] Babbell contends that because this statement is a conclusion of the officer and cannot be pierced to determine the characteristics of the truck that led to the conclusion of a "match," the affidavit cannot satisfy the requirement that the magistrate be presented with particularized facts and circumstances in such a way as to permit the magistrate to make the judgment about probable cause. It is well established that a warrant cannot issue solely on the strength of "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Illinois v. Gates,* 462 U.S. at 239, 103 S.Ct. at 2333. And we agree that we are presented with a close question here because of the rather sloppy drafting of the affidavit. However, we conclude that Babbell's contention must be rejected.

Despite Babbell's assertion that one cannot tell from the affidavit what characteristics the truck had, the affidavit does set out specifically and in detail the characteristics of the truck as described by the witnesses, including the make, approximate year, four-wheel-drive equipment, color, missing bumpers, cracked windshield, orange seat covers, and "55 mph sucks" button on the driver's visor. It then explains that Cazier, a trained officer, had observed the truck from the street and then more

closely with the resident's permission and states that defendant's vehicle "matches" the given description. We acknowledge that the affidavit is ambiguous in its use of the word "match," but conclude that it was within the magistrate's discretion to construe Cazier's statement that Babbell's truck "matched the description" to mean that the truck matched with respect to those characteristics expressly described in the affidavit. Once that reasonable construction was made, the magistrate had a "substantial basis" for determining that there was a "fair probability" that a search would uncover evidence. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332. The described characteristics of the truck are sufficiently specific to permit the magistrate to decide whether the truck in the driveway was distinctive enough to give him probable cause to believe that it was the truck used in the crime and that a search would produce evidence.[3] In light of this conclusion, we need not reach the parties' remaining arguments about the constitutionality of admitting or excluding evidence obtained under a defective warrant.

There remains the question of the propriety of the refusal to suppress the long flashlight and the "55 mph sucks" button, neither of which were fully described in the itemized list in the search warrant. The warrant authorized a search for the following:

1. Small revolver, snub-nose type

2. Hunting knife, with approximately 6″ blade

3. Wondra Lotion

4. Large black flashlight

---

2. Babbell has also raised several arguments with respect to the portion of the affidavit explaining that Babbell was initially identified as a possible suspect by Detective Johnson because of the modus operandi of the crime and the description of the assailant. The State has agreed that this portion of the affidavit should not be considered in reviewing the sufficiency of the affidavit. Therefore, we ignore the statement, and we do not consider Babbell's contentions on this point.

3. Although we conclude that the magistrate did not err in finding the affidavit sufficient, we must observe that this is a very close question.

If the affidavit were more vague, we might well reach the opposite conclusion. Judges should be reluctant to base a probable cause determination on so poorly drafted an affidavit. The better approach would be to require that an affiant take the simple but critical additional step of clearly and unambiguously stating how the vehicle matches the detailed description obtained from witnesses. A few short minutes spent in more carefully preparing this affidavit would have ensured the protection of the accused's constitutional rights while saving a substantial amount of time for the courts and parties.

5. Wallet, maroon in color, velcro fast[e]ner, containing credit cards and identification of [K.]

6. Clothing consisting of white short-sleeved O.P. Brand T-shirt, blue baseball cap

Detective Cazier seized a number of items not on the list, including a long maroon-colored flashlight and the "55 mph sucks" button. At the pretrial suppression hearing, the court suppressed most of the seized items not described in the warrant; however, it refused to suppress the flashlight or the button. Babbell argues that because these items were not described with particularity in the warrant, their seizure violated the fourth amendment's requirement of a particular description of the places to be searched and things to be seized. *See State v. Gallegos,* 712 P.2d 207, 209 (Utah 1985); *see generally* La-Fave, §§ 4.6(a), 4.11.

■ With respect to the flashlight, the State argues that it was lawfully seized because it was, in fact, described in the warrant. We agree. The warrant authorized the seizure of a "[l]arge black flashlight," and the affidavit set out the victim's report that the suspect used a "large black police-type flashlight." The flashlight actually seized from Babbell's truck matched the description except that rather than being black, it was a dark maroon color. Given the fact that the flashlight had been seen by the victim only in the darkness and that it otherwise matched the description, we conclude that the difference in color was an immaterial variance and that the flashlight was adequately described and properly seized.

■ With respect to the "55 mph sucks" button, the State concedes that the button was not listed in the warrant. However, the State argues that the button was subject to seizure under the "plain view doctrine."[4] As we explained in *State v. Kelly,* 718 P.2d 385, 390 (Utah 1986), that doctrine allows the seizure of an item that is in the

plain view of an officer who has lawfully entered the area and has probable cause to believe that the item is evidence of a crime. *See Texas v. Brown,* 460 U.S. 730, 737, 741–42, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983) (plurality opinion); *State v. Gallegos,* 712 P.2d at 210; *State v. Romero,* 660 P.2d at 718; *see generally* La Fave, §§ 2.2, 4.11. Detective Cazier lawfully entered the cab of the truck pursuant to the search warrant and searched for the listed items. The button was on the visor and clearly within plain view. Because the victim had described the button to him, as is evidenced by a passage in the probable cause affidavit, Cazier had ample grounds to believe the button was evidence of the crime. We conclude that the trial court was justified in denying Babbell's motion to suppress the button.

Finally, the State, at oral argument, raised an issue with respect to the lawfulness of the sentence imposed. The trial court sentenced Babbell to two concurrent terms and one consecutive term of five years to life. In doing so, the court treated these crimes as any other first degree felonies, apparently overlooking the fact that in 1983, the legislature made the normal first degree sentencing options unavailable for these crimes and instead required minimum mandatory sentences. Under these 1983 enactments, sections 76–3–201(5), 76–5–302, and –405 of the Code, the court should have sentenced Babbell to one of three minimum mandatory terms of five, ten, or fifteen years to life on each conviction. *See* Utah Code Ann. §§ 76–3–201(5), 76–5–302, –405 (Supp.1985). And in sentencing under these minimum mandatory provisions, the trial court also must state on the record its reasons for imposing the particular term it selects. *See State v. Shickles,* 760 P.2d 291, 302–03 (Utah 1988); *State v. Bell,* 754 P.2d 55, 58 (Utah 1988). Because the trial court did none of this, it did not proceed under the minimum mandatory provisions.

4. The State also argues that Babbell waived objection to admission of the button because, although he raised this "particularity" argument in the pretrial motion, he did not raise it again

with sufficient clarity at trial. Our review of the record leads us to conclude that the issue was adequately raised and preserved for appeal.

■ The State raised this sentencing issue for the first time at oral argument. It explained that this issue was not briefed because the State thought it might be resolved by the county attorney before the appeal would be argued. It is generally inappropriate to raise issues at oral argument that have not been designated as issues on appeal in a docketing statement or in the briefs. However, given the unquestioned fact of error and its nature and that the State could not have properly appealed the issue,[5] we conclude that in this particular instance, the failure to raise this issue earlier does not preclude us from requiring that defendant be lawfully sentenced.

We affirm Babbell's convictions, vacate the sentences, and remand the case for resentencing.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

**5.** Section 77–35–26(c) of the Code, which sets out the limited grounds on which the prosecution can appeal from a trial court decision in a criminal case, does not include sentencing errors. Therefore, the State could not have properly cross-appealed to raise this issue.