**STATE of Utah, Plaintiff and Appellee,**

v.

**Jerry Leon PURSER, Defendant and Appellant.**

**No. 910348–CA.**

Court of Appeals of Utah.

March 11, 1992.

Lynn R. Brown and Ronald S. Fujino, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, Associate P.J., and BENCH and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Jerry Leon Purser appeals the trial court's denial of his motion to suppress evidence seized under a search warrant. Defendant entered a conditional guilty plea to possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. §§ 58–37–8(1)(a)(iv) and 58–37–8(1)(b)(i) (1990), reserving the right to appeal the denial of his motion to suppress. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988). We affirm.

## FACTS

Narcotics detective Steve Sharp of the Salt Lake County Sheriff's Department requested a search warrant on August 23, 1990. He submitted an affidavit relating his belief that amphetamines, packaging and cutting materials, glassware, drug paraphernalia and other chemicals and materials used to manufacture a controlled substance would be found on defendant's property.

The affidavit stated Detective Sharp had been contacted by a confidential informant (C.I.) who reported defendant was selling amphetamines at his residence and described defendant's person, car and address. The C.I. stated he had observed illicit drug use, glassware, Bunsen burners, a light yellow liquid and chemicals inside defendant's residence during the thirty days prior to the filing of the affidavit.

The affidavit further described how the C.I. assisted Detective Sharp in performing two drug buys through the use of an unwitting participant, within ten days prior to the filing of the affidavit. The C.I. picked up the unwitting participant, gave the unwitting participant money provided by Detective Sharp and received amphetamines from the unwitting participant after the unwitting participant entered the defendant's residence. The unwitting participant told the C.I. that defendant sold the unwitting participant the amphetamines. Detective Sharp searched the C.I. for money and drugs before and after the controlled buys and both the C.I. and the unwitting participant were observed during the buys, except for the time the unwitting participant was in defendant's residence. The C.I. received nothing for the information or assistance.

In the affidavit, Detective Sharp described his narcotics experience and stated that during the investigation, he observed persons enter defendant's residence and leave after only a few minutes, which suggested narcotics trafficking. He corroborated defendant's identity through personal observation, police and driver's license records and a registration check on defendant's automobile. Police arrest records showed defendant had been arrested for possession of a controlled substance with the intent to distribute.

Detective Sharp requested a no knock, nighttime warrant, stating the evidence sought could be hidden or destroyed easily and that it would be safer for the officers to use darkness to conceal their approach. Detective Sharp based his safety concerns on information from the C.I. that defendant had spoken of weapons and on Detective Sharp's observation of a sign at defendant's house claiming: "This property insured by Smith and Wesson."

The no knock, nighttime search warrant was issued and officers conducted the search at 9:12 p.m. on August 23, 1990. The officers seized two to three thousand amphetamine tablets, several firearms and ammunition, packaging materials, scales,

drug paraphernalia, cash, marijuana seeds and other miscellaneous items.

Defendant moved to suppress the evidence seized, claiming the search warrant was defective because the supporting affidavit did not establish probable cause and did not support the no knock or nighttime authorization. Defendant also requested the identity of the C.I. to show the C.I. was unreliable and thus defeat probable cause. The trial court denied both motions and defendant appeals.

## PROBABLE CAUSE TO SUPPORT SEARCH WARRANT

Defendant contends the affidavit supporting the search warrant was insufficient to establish probable cause. In particular, defendant argues the C.I. was unreliable and the buys by the unwitting participant were not reliable, controlled buys because the unwitting participant was not searched before and after the purchases.

■ Before issuing a search warrant, a neutral magistrate must review an affidavit containing specific facts sufficient to support a finding of probable cause. *State v. Babbell*, 770 P.2d 987, 990 (Utah 1989); *State v. Droneburg*, 781 P.2d 1303, 1304 (Utah App.1989). The magistrate must not merely ratify the bare conclusions of others. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983); *Babbell*, 770 P.2d at 990–91; *Droneburg*, 781 P.2d at 1304. The magistrate's task is to decide "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332; *see Babbell*, 770 P.2d at 991; *State v. Weaver*, 817 P.2d 830, 832–33 (Utah App.1991). Upon appellate review, we examine the search warrant affidavit "in its entirety and in a common-sense fashion," *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985), deferring to the magistrate's decision on whether the search warrant is supported by probable cause. *Gates*, 462 U.S. at 236, 103 S.Ct. at

2331; *Babbell*, 770 P.2d at 991; *Weaver*, 817 P.2d at 833.

■ Factors to consider in determining whether probable cause exists include an informant's veracity, reliability and basis of knowledge. *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329; *State v. Hansen*, 732 P.2d 127, 130 (Utah 1987); *State v. Brown*, 798 P.2d 284, 286 (Utah App.1990). In some cases, the circumstances may require the supporting affidavit to set forth in detail the basis of knowledge, veracity and reliability of a person supplying information in order to establish probable cause. *State v. Bailey*, 675 P.2d 1203, 1205 (Utah 1984). In other cases, if the circumstances as a whole demonstrate the truthfulness of the informant's report, a less strong showing is required. *Id.* at 1205–06. For example, reliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information. *See Bailey*, 675 P.2d at 1206; *Brown*, 798 P.2d at 286; *State v. Stromberg*, 783 P.2d 54, 57–58 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990). Courts have also consistently approved the issuance of search warrants where the informant's knowledge is based on personal observation. *See Hansen*, 732 P.2d at 130; *Brown*, 798 P.2d at 287; *Stromberg*, 783 P.2d at 57. Further buttressing reliability is the detail with which an informant describes the facts set forth in the affidavit and independent corroboration of the significant facts by police. *See Anderson*, 701 P.2d at 1102; *Bailey*, 675 P.2d at 1206; *Brown*, 798 P.2d at 287.

■ In the instant case, the affidavit set forth information from the C.I. based on the C.I.'s personal observations, satisfying the "basis of knowledge" consideration of the totality-of-the-circumstances test. The affidavit did not indicate whether the C.I. had been previously reliable. However, the circumstances as a whole indicate the C.I.'s information was reliable. The C.I. did not receive anything in exchange for the information provided, but rather volunteered the information to police. In addition, the

C.I. described defendant's appearance, house, vehicle and the contents of defendant's house with detail and Detective Sharp independently corroborated significant facts. Detective Sharp checked defendant's address, vehicle registration and police record, thereby verifying all of the information given by the C.I., except for the items located in defendant's house. Detective Sharp also personally observed defendant, defendant's house and vehicle, and noticed persons enter defendant's house and leave shortly thereafter, which based upon his experience was consistent with drug trafficking. "Having personally verified all but one piece of information provided by the informant, the officer thus had reasonable grounds to believe that the remaining piece ... was also true." *Anderson*, 701 P.2d at 1102.

■ Finally, the C.I. assisted officers in conducting two purchases, yielding amphetamines in the form of cross-top pills and a white powder, similar to those the C.I. personally observed in defendant's residence. Officers searched the C.I. before and after each purchase and observed the C.I. throughout. However, because the unwitting participant was not searched, defendant claims the buys cannot be used to verify the information given by the C.I. The purpose of searching a participant before and after a controlled purchase is to prevent the participant from implicating innocent third persons in order to gain police favor or for other personal reasons. *Reyes v. State*, 541 So.2d 772, 773 (Fla.Dist.Ct. App.1989). Where a person unknowingly assists the police, the opportunity and motivation for misconduct do not arise. *Id.* Accordingly, courts have found probable cause where the unwitting participant is not searched and disappears within the residence for a short period of time. *See Delgado v. State*, 556 So.2d 514, 516 (Fla. Dist.Ct.App.1990); *Reyes*, 541 So.2d at 773; *State v. Hawkins*, 278 N.W.2d 750, 751–52 (Minn.1979).

In defendant's case, we need not question the unwitting participant's reliability and veracity because the unwitting did not knowingly participate in the controlled purchases and acted against his/her own penal interest in making the purchase. Additionally, officers watched the unwitting participant continuously, with the exception of the short time the unwitting participant was in defendant's residence.

Therefore, we conclude, based on the totality of the circumstances, that the affidavit established probable cause to believe drugs would be found at defendant's residence.

## NO KNOCK, NIGHTTIME SEARCH WARRANT

■ Defendant contends the no knock, nighttime warrant was not justified because the evidence sought included drug manufacturing devices that could not be disposed of easily. Utah Code Ann. § 77–23–10 (1990) provides that a no knock warrant is justified only upon proof "that the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given." In addition, the warrant must be served in the daytime unless the affidavit supports a finding that a nighttime search is necessary "to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason." Utah Code Ann. § 77–23–5 (1990).

Courts have allowed no knock warrants because of the concern for destruction of evidence where "the affidavit suggests that a small, readily disposable quantity of drugs in a residence is the object of the search." *State v. Rowe*, 806 P.2d 730, 733 (Utah App.) (amphetamines and marijuana), *cert. granted*, 817 P.2d 327 (Utah 1991); *see also State v. Miller*, 740 P.2d 1363, 1367 (Utah App.) (marijuana plants), *cert. denied*, 765 P.2d 1277 (Utah 1987).

Where larger quantities of drugs or allegations of drug manufacturing are involved, the destruction justification may be less persuasive. However, because of the danger involved in dealing with those who are engaged in large-scale drug manufacturing and distribution, no knock, nighttime warrants are justified to allow officers the advantage of surprise, thus protecting

their safety. *See State v. Lien,* 265 N.W.2d 833, 839 (Minn.1978); *State v. Valento,* 405 N.W.2d 914, 919–20 (Minn.Ct. App.1987). Courts have approved nighttime searches, allowing officers the cover of darkness, if there are specific facts indicating the occupant may be armed or dangerous. *See United States v. Pryor,* 652 F.Supp. 1353, 1364 (D.Me.1987); *People v. Kimble,* 44 Cal.3d 480, 749 P.2d 803, 244 Cal.Rptr. 148, *cert. denied,* 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988).

In the instant case, the officers were searching for amphetamines, in the form of pills and powder; packaging and cutting materials; drug paraphernalia; glassware; and other materials used to manufacture a controlled substance. Detective Sharp observed persons entering defendant's house and leaving after only a few minutes, indicating drug trafficking. The C.I. reported that defendant spoke of weapons and Detective Sharp observed a sign stating: "This property insured by Smith and Wesson." Thus, the affidavit set forth evidence of easily disposable drugs, talk and signs of weapons and evidence that the residence was being used as a drug outlet. The officers were searching for evidence that either could be easily hidden or destroyed, or that demonstrated possible danger to the officers. In addition, officers executed the warrant in the evening at a time when previous purchases took place and when defendant was likely to be home. Therefore, we conclude based on the facts in the affidavit, the no knock, nighttime warrant was justified.[1]

## DISCLOSURE OF C.I. AND UNWITTING PARTICIPANT

■ Finally, defendant argues that knowing the identities of the C.I. and the unwitting participant would have helped his defense; therefore, the identities should be disclosed. Defendant did not seek disclosure of the unwitting participant's identity in the trial court and we will not consider the issue raised for the first time on appeal. *State v. Webb,* 790 P.2d 65, 77 (Utah App.1990). As to the C.I., if defendant had been prosecuted for the transactions involving the C.I., and disclosure was "essential 'to assure a fair determination of the issues,'" *State v. Forshee,* 611 P.2d 1222, 1224 (Utah 1980), disclosure would be required. However, defendant was not prosecuted based on the transactions involving the C.I. Defendant was prosecuted for possession with intent to distribute based on the items found when the search warrant was executed. Thus the controlled purchases in the affidavit were not in issue and were relevant only to the question of probable cause to support the search warrant.

The Utah Supreme Court has clearly stated that "courts will not compel disclosure of the identity of an informant, who has supplied probable cause for the issuance of a warrant, where disclosure is sought merely to aid in attacking probable cause" by attacking the reliability of the informant. *State v. Bankhead,* 30 Utah 2d 135, 514 P.2d 800, 802 (1973); *accord McCray v. State,* 386 U.S. 300, 305, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967);

---

**1.** We distinguish the affidavit in this case from that in *Rowe,* 806 P.2d 730. In *Rowe,* we held that checking a box next to a preprinted recital that evidence could easily be disposed of and harm to officers could result from notice, by itself, was not sufficient to justify a nighttime search. In contrast to *Rowe,* the affidavit in the present case set forth specific facts demonstrating the danger to officers and the advantages of a no-warning search under cover of darkness. In addition, the officers searched at 9:12 p.m. in August, as opposed to 11:50 p.m. in *Rowe,* not at a time when the occupants of the house would likely be asleep and tend to overreact to a forceful entry.

We have not found any Utah statutes or cases defining "nighttime." There are generally three views for determining what time is "nighttime." The first view requires a factual determination of whether there is sufficient natural light that one can distinguish a person's features. *See, e.g., State v. Burnside,* 113 Idaho 65, 741 P.2d 352, 356 (App.1987). The second view defines nighttime according to sunrise and sunset. *See, e.g., Grant v. Hass,* 31 Tex.Civ.App. 688, 75 S.W. 342, 343 (1903) (daytime is thirty minutes before sunrise to thirty minutes after sunset). The last view sets forth specific hours for execution of a search warrant without special authorization. *See, e.g.,* Fed.R.Crim.P. 41(h) (6:00 a.m. to 10:00 p.m.). We do not reach this issue because it was not briefed and we find the nighttime search was justified in this case.

**520**

*State v. Sessions,* 583 P.2d 44, 45 (Utah 1978). Therefore, because defendant requested disclosure merely to challenge statements made in the affidavit supporting the search warrant, we conclude the trial court appropriately denied the request.

In conclusion, we hold there were sufficient facts in the affidavit in support of the search warrant to establish probable cause and to justify a no knock, nighttime warrant. Furthermore, we find no error in the trial court's refusal to disclose the identity of the C.I. Therefore, we affirm defendant's convictions.

BENCH and RUSSON, JJ., concur.