STATE of Utah, Plaintiff and Appellee,

v.

Daniel J. BROOKS, Defendant
and Appellant.

No. 920198–CA.

Court of Appeals of Utah.

March 22, 1993.

 

Bradley P. Rich (argued), Yengich, Rich & Xaix, Salt Lake City, for defendant and appellant.

Jan Graham, State Atty. Gen., and Todd A. Utzinger, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before RUSSON, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

RUSSON, Associate Presiding Judge:

Daniel J. Brooks appeals his convictions of possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58-37-8 (Supp.1991), and possession of a controlled substance without drug tax stamps affixed, a third degree felony, in violation of Utah Code Ann. § 59-19-105 and -106 (Supp.1991). We affirm.

## FACTS

The facts are undisputed. On March 14, 1991, Detective Lon Brian of the Davis County Metro Narcotics Strike Force appeared before a magistrate with an affidavit to obtain a warrant to search the home of Daniel J. Brooks. The affidavit stated, in pertinent part:

1. Affiant spoke with a confidential informant who stated that the informant was aware of an individual named Danny Brooks residing in the Ogden area who could supply cocaine.

2. Affiant contacted Detective Watt and Detective Garrett with the Weber/Morgan Narcotics Strike Force and requested any information that they might have with regard to Danny Brooks. They told affiant that Mr. Brooks has been a target of investigations during the last several years. Affiant was informed that the most recent case was provided by a concerned citizen who reported on June 7, 1990, that neighbors to Mr. Brooks, who resided on 8th Street at that time, had observed a large amount of traffic to his residence that continued until the early morning hours.

3. Detective Garrett indicated that Detective Shane Minor of the Strike Force reported seeing Brooks driving the vehicle of John Balaich who is a known dealer of controlled substances. He further has received information from informants who have previously provided accurate information that Brooks and Balaich are currently in partnership dealing in cocaine.

4. Affiant has acquired a current criminal record of Brooks which shows that from 1980 through 1988 he has been arrested eight times on controlled substance violations, four of which resulted in convictions. One of the convictions in 1981 was for possession of a controlled substance with intent to distribute.

5. On March 13, 1991, Detective Nick Sweat told affiant that during the last 72 hours he met with the confidential informant mentioned in paragraph 1. He stated that [he] affixed an electronic monitoring device to the informant and followed the informant to the location of a multi-unit complex located across from the El Monte Golf Course in Ogden, Utah. [Detective Sweat] observed the informant go to the building. He stated that he heard the informant enter a residence and call someone by the name "Danny." He also stated that he overheard conversation consistent with the distribution of controlled substances including references to money being requested or exchanged. Detective Sweat stated that when the informant came out of the complex the informant confirmed that a transaction had occurred inside the residence involving the sale of cocaine.

6. Affiant has been taken to the area where the above transaction occurred on an earlier occasion by the informant who pointed out the location of the unit. Affiant observed the unit was located in a building on the South side of the road, which was a multi-level unit. Affiant was told by the informant that the unit number was 6. At that time the informant also indicated that Brooks informed him that he often keeps the controlled substances in the detached garage located at the building. He also indicated that Brooks not only deals in cocaine but also marijuana and some prescription drugs.

7. Affiant has shown the above location to Detective Garrett who stated that the address of the building is 1255 Valley Drive, Ogden, Utah. Detective Garrett also stated that he spoke with Officer Hanselman of the Ogden Police Department who stated that approximately four weeks ago he had stopped Danny Brooks on a traffic violation and at that time was given a home address of 1255 Valley Drive, Ogden, Utah.

On the basis of Detective Brian's affidavit, the magistrate issued a warrant directing law enforcement personnel to search Brooks's residence and a detached garage for "Controlled substances[,] Drug paraphernalia[,] Records evidencing the sale of controlled substances[, and] Records evidencing occupancy or ownership of the premises." The warrant was executed on March 15, 1991, and the officers obtained drugs, contraband and other evidence of controlled substance violations.

Brooks was subsequently charged with eight counts of controlled substance violations. Brooks filed a motion to suppress, claiming that all of the evidence was seized in violation of his rights under the Fourth Amendment to the United States Constitution and article I, section 14 of the Utah Constitution. The trial court denied the motion, stating:

The affidavit could have been couched in terms which might have been more illuminating but considering the document as a whole, the magistrate was justified in finding "probable cause."

As an aside, the court believes that if the State adopts [an exception under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 [82 L.Ed.2d 677] (1984)], this case factually could be an example of how it should work.

Brooks pleaded guilty to one count of possession of a controlled substance with the intent to distribute, and one count of possession of a controlled substance without drug tax stamps affixed, conditional upon preserving his right to appeal the

trial court's denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 938 (Utah App.1988).

Brooks appeals, claiming that: (1) the trial court erred in concluding that the warrant affidavit was sufficient to establish probable cause; and (2) article I, section 14 of the Utah Constitution should be read more broadly than the Fourth Amendment to the United States Constitution and provide for suppression in the case at bar.[1]

## STANDARD OF REVIEW

■ We review the factual findings underlying the denial of a motion to suppress evidence under a "clearly erroneous" standard, and review the trial court's conclusions of law based thereon for correctness. *State v. Brown*, 212 Utah 38 (Utah 1992).

## SUFFICIENCY OF THE AFFIDAVIT

Brooks argues that the trial court erred in concluding that the affidavit in support of Detective Brian's request for a search warrant was sufficient to establish probable cause. The State responds that although the affidavit could have been more clearly drafted, the trial court accorded appropriate deference to the issuing magistrate's probable cause determination and properly denied Brooks's motion to suppress.

■ "Before issuing a search warrant, a neutral magistrate must review an affidavit containing specific facts sufficient to support a finding of probable cause." *State v. Purser*, 828 P.2d 515, 517 (Utah App.1992) (citing *State v. Babbell*, 770 P.2d 987, 990 (Utah 1989); *State v. Droneburg*, 781 P.2d 1303, 1304 (Utah App.1989)). In determining whether probable cause exists, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying

hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). *See also United States v. Dill*, 693 F.2d 1012, 1014 (10th Cir.1982) ("Probable cause for a search warrant is nothing more than a reasonable belief that the evidence sought is located at the place indicated by the policeman's affidavit.") (citation omitted) (quoted with approval in *State v. Weaver*, 817 P.2d 830, 833 (Utah App. 1991)).

■ On appeal, we do not conduct a de novo review of the magistrate's probable cause determination, *State v. Collard*, 810 P.2d 884, 885 (Utah App.) (citations omitted), *cert. denied*, 817 P.2d 327 (Utah 1991), but only "determine whether the issuing magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *Id.* (citing *Babbell*, 770 P.2d at 991). In so doing, we consider the affidavit "in its entirety," *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985), and pay great deference to the magistrate's determination. *Collard*, 810 P.2d at 886 (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *Babbell*, 770 P.2d at 991).

In the case at bar, the grounds given in support of Detective Brian's request for a warrant were: (1) a report by a confidential informant that Brooks resided in Ogden and could supply cocaine; (2) information from two detectives with the Weber/Morgan Narcotics Strike Force that Brooks had been a target of investigations during the past several years; (3) a report by another detective that he had seen Brooks driving the vehicle of John Balaich, a known drug dealer; (4) information from confidential informants who had previously provided accurate information that Brooks and Balaich were at that time engaged in partnership dealing in cocaine; (5) Brooks's crimi-

---

**1.** Brooks also argues on appeal that the trial court erred in applying the *Leon* "good faith" exception to the facts in this case, and that *Leon* does not apply under article I, section 14 of the Utah Constitution. However, given our resolution of Brooks's first point, and the fact that the trial court did not decide this case on the basis of *Leon*, but merely mentioned it as an "aside," Brooks's *Leon* arguments need not be addressed.

nal record, which indicated that from 1980 through 1988 he had been convicted four times on controlled substance violations, one of which was for possession of a controlled substance with intent to distribute; (6) a report from Detective Nick Sweat that during the last 72 hours he met with the confidential informant mentioned above, affixed an electronic monitoring device to the informant, followed the informant to an apartment complex, observed the informant go to the building, heard the informant enter a residence and call someone by the name "Danny," overheard conversation consistent with the distribution of controlled substances including references to money being requested or exchanged, and that when the informant came out of the complex the informant confirmed that a transaction had occurred inside the residence involving the sale of cocaine; (7) a verification by the same confidential informant that the unit in question was Brooks's residence; and (8) a report from that informant that Brooks told him that he often keeps the controlled substances in the detached garage located at the building.

Given that a probable cause determination centers on the probability that evidence of a crime will be found in a particular place, *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, two of the above grounds are not properly part of that determination. First, the information that Brooks had been a target of investigations by the Weber/Morgan Narcotics Strike Force during the past several years does not indicate that controlled substances will currently be found at Brooks's residence. This is especially true in light of the fact that the last report in their records involved a concerned citizen complaint that occurred some nine months earlier when Brooks resided at a different address, and did not result in any action being taken by the strike force. Secondly, Brooks's criminal record also does nothing to establish that he is currently dealing in controlled substances, particularly since his most recent arrest was in 1988, at least two years prior to the events in the case at bar.

However, the remaining grounds, taken as a whole, demonstrate that "the issuing magistrate had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *Collard*, 810 P.2d at 885 (citation omitted). Central to this probable cause determination was information given by a confidential informant. As to the use of information by confidential informants, we have previously held:

> In some cases, the circumstances may require the supporting affidavit to set forth in detail the basis of knowledge, veracity and reliability of a person supplying information in order to establish probable cause. In other cases, if circumstances as a whole demonstrate the truthfulness of the informant's report, a less strong showing is required. For example, reliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information. Courts have also consistently approved the issuance of search warrants where the informant's knowledge is based on personal observation. Further buttressing reliability is the detail with which an informant describes the facts set forth in the affidavit and independent corroboration of the significant facts by police.

*Purser*, 828 P.2d at 517 (citations omitted).

In the case at bar, there is no indication in the facts that the informant received anything from the police in exchange for the information. Moreover, much of his information was based on personal observation. Additionally, his report that Brooks was currently dealing in controlled substances was substantiated by information given by other confidential informants whose veracity and reliability had been confirmed, the drug transaction that he witnessed was corroborated by Detective Sweat, and the fact that Brooks lived at that address was confirmed by Detective Garrett and Officer Hanselman. Thus, since the circumstances as a whole support the truthfulness of the information received from the confidential informant in the case at bar, it is not fatal that the supporting affidavit did not set forth in detail his veracity and reliability.

Furthermore, in requesting the search warrant, Detective Brian not only relied on information obtained from a confidential informant, but also on Detective Minor's report that he had seen Brooks driving the vehicle of a known drug dealer, as well as the drug transaction overheard by Detective Sweat. In light of all the evidence presented to the magistrate, and "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)), we conclude that, even omitting Brooks's criminal record and the fact that he had been a target of investigation, the magistrate had sufficient foundation for determining that probable cause existed. Accordingly, the trial court did not err in concluding that the affidavit in support of Detective Brian's request for a search warrant was sufficient to establish probable cause, nor in denying Brooks's motion to suppress.

## ARTICLE I, SECTION 14

Brooks argues that article I, section 14 of the Utah Constitution should be read more broadly than the Fourth Amendment to the United States Constitution and provide for suppression in the case at bar. However, he does not articulate how article I, section 14 should be read more broadly, nor how such a broader reading would result in suppression in this case. Instead, he merely relies upon general statements that Utah has a unique history and that in some cases, other states have interpreted their constitutions to provide broader protections than the United States Constitution. Additionally, he cites *State v. Larocco*, 794 P.2d 460, 465–71 (Utah 1990), for the proposition that the Utah Supreme Court has recognized a greater degree of protection under article I, section 14 than under the United States Constitution. However, as previously noted by this court in *State v. Strickling*, 844 P.2d 979 (Utah App.1992):

> The precedential value of the *Larocco* rationale is somewhat unclear ... because Justice Durham's reasoning was

joined by only Justice Zimmerman. Justice Stewart concurred in the result, but provided no insight into his rationale. Because he concurred only in the result, and because Justice Durham arrived at the result by using state constitutional analysis, it is possible that Justice Stewart arrived at his conclusion strictly through a Fourth Amendment approach. *Cf. Sims v. Utah State Tax Comm'n*, 841 P.2d 6, 15–16 (Utah 1992) (Stewart, J., concurring in the result) (in roadblock case, Justice Stewart condemns lead opinion's reliance on state constitutional analysis because "the roadblock [was] illegal under federal law")....

*Id.* at 985 n. 2.

Moreover, affidavits such as the one in the case at bar have been consistently upheld against challenges to their facial sufficiency. *See, e.g., State v. Babbell*, 770 P.2d 987, 991 (Utah 1989); *State v. Anderson*, 701 P.2d 1099, 1102 (Utah 1985); *State v. Purser*, 828 P.2d 515, 517 (Utah App.1992); *State v. Weaver*, 817 P.2d 830, 833–34 (Utah App.1991); *State v. Collard*, 810 P.2d 884, 885 (Utah App.1991). Thus, to hold to the contrary would be a fundamental departure from well-established law in this state. Since Brooks has offered no persuasive reason for abandoning the doctrine of stare decisis, such a departure must come, if at all, from the Utah Supreme Court. *See State v. Thurman*, 846 P.2d 1256, 1268–71 (Utah 1993); *accord Strickling*, 844 P.2d at 985 n. 2.

## CONCLUSION

For the foregoing reasons, the trial court did not err in denying Brooks's motion to suppress. Accordingly, Brooks's convictions are affirmed.

GREENWOOD and JACKSON, JJ., concur.