**STATE of Utah, Plaintiff and Appellee,**

v.

**Mark S. BLAHA, Defendant and Appellant.**

**No. 920328–CA.**

Court of Appeals of Utah.

April 20, 1993.

Elizabeth A. Bowman and Joan C. Watt, Salt Lake City, for defendant and appellant.

Jan Graham, David B. Thompson, and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant, Mark S. Blaha, appeals a conviction of attempted possession of a controlled substance. Virtually all the evi-

---

dence used to convict him was obtained via a search executed pursuant to a warrant.

## FACTS

The affiant, Officer Bill McCarthy of the West Valley City Police Department, based his affidavit accompanying the petition for a search warrant on information obtained from a confidential informant (C.I.). The C.I. had not been promised nor paid anything for the information provided. The C.I. said her spouse was a cocaine addict. She reported that while she had never been in the apartment in question, her husband had been purchasing cocaine there for the last six months, and that his most recent buy was within the last five days. The C.I.'s husband had told her that his cocaine suppliers were in the apartment. The C.I. reported that she and her husband had driven to the apartment on two occasions. During each occasion, the C.I. waited in the car while her husband went inside the apartment. Her husband then exited the apartment and either ingested or injected the cocaine.

The C.I. also reported that she had been to the premises as late as two in the morning with her husband when he had purchased cocaine, that her husband had spent as much as one thousand dollars for cocaine in a single day at the named premises, and that the busiest times of drug trafficking at the premises were during the late evening hours.

McCarthy corroborated this information in several ways. First, he checked the husband's criminal record, showing a prior narcotics arrest. The affidavit recited that he also questioned a relative of the C.I.'s husband, revealed at the suppression hearing to be his mother. His mother confirmed that her son had a long history of cocaine abuse, that he had been at the subject apartment, and that he had admitted to purchasing cocaine there.

McCarthy had also observed the apartment, noting a traffic pattern wherein vehicles "arrive and stay a very short period of time." McCarthy stated that, based on his experience, this pattern was consistent with narcotics trafficking.

McCarthy believed the trafficking to be of an ongoing nature because the C.I.'s husband had been purchasing cocaine from the premises for at least the last six months, and the C.I. had been to the premises and had observed her husband enter and then exit the premises with cocaine, the most recent time being within the last five days.

In his affidavit, McCarthy asked that the warrant be no-knock and that it could be served at any time of the day or night. He justified this request by stating that the items to be seized could easily be destroyed. Further, the C.I. reported that her husband had been threatened by his suppliers when he had been late in paying for cocaine. She also reported that her spouse had threatened to "get even" with her in the event she reported his cocaine buying to the police. McCarthy's affidavit included his own statements that he believed no-knock warrants were safer when they involved warrants to search the site of drug trafficking:

> Your affiant firmly believes it always safer for ... police officers, participants and non-participants to the sales operation if the officers have the safety of an unannounced entry. Your affiant has been on numerous narcotics search warrants [where] weapons have been readily available to the occupants. Further your affiant knows from training and experience that more and more narcotics dealers are arming themselves to protect the sales operations from other dealers/users.

The affidavit stated that the items to be seized were as follows:

1. Packaging material, to include but not limited to, scales, plastic baggies, tape, paper bindles cut into squares.

2. Drug paraphernalia, to include but not limited to, syringes, bent spoons, cotton balls, mirrors, razor blades, short straws, pipes for smoking cocaine, glassware used to make crack cocaine, cut material, marijuana pipes, rolling papers and bongs.

3. Residency papers, to include but not limited to, utility receipts and/or bills, rental/lease agreements, and articles showing occupancy of the premises.

4. U.S. currency believed to be in close proximity to the narcotics being searched for.

5. Narcotic recordations, to include but not limited to, price list, amounts sold, times, dates, amounts purchased, and especially drug indebtedness.

The magistrate issued a no-knock warrant to be served "at any time of the day." The officers served the warrant at 10:45 in the morning. The search revealed "five bindles of suspected cocaine."

Blaha entered a conditional guilty plea to one count of attempted unlawful possession of a controlled substance, Utah Code Ann. §§ 58–37–8(2)(a)(i) and 76–4–101 (1990). Blaha reserved his right to appeal the court's denial of his motion to suppress. See *State v. Sery*, 758 P.2d 935 (Utah App. 1988).

## PROBABLE CAUSE

Blaha first claims the warrant failed to establish probable cause to search the premises. Specifically, he cites the following omissions as fatal to the affidavit: (1) the C.I. had never been inside the residence and had never witnessed any drug transactions; (2) the C.I.'s husband's alleged drug buys were not controlled; (3) much of the C.I.'s information was based on hearsay statements of her husband; (4) the C.I. failed to state the dates on which her husband allegedly purchased drugs at the premises; (5) with one exception, the C.I. failed to state whether the drug transactions were recent; (6) the C.I. failed to state whether the activity occurred during the six-month period prior to the issuance of the warrant; (7) the C.I. failed to state whether the drug activity was ongoing; (8) the affidavit failed to outline the veracity or reliability of the informants; (9) the affidavit failed to state the date, time or length of surveillance; (10) the affidavit failed to state how many vehicles arrived, the arrival time, or length of stay; and (11) the affidavit failed to state whether people actually entered the residence. In short, there were no statements by anyone with firsthand knowledge that a drug transaction had taken place inside the premises.

"In reviewing the magistrate's finding of probable cause to support a search warrant based on an affidavit, we will find the warrant invalid only if the magistrate, given the totality of the circumstances, lacked a 'substantial basis' for determining that probable cause existed." *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993) (quoting *State v. Babbell*, 770 P.2d 987, 991 (Utah 1989)). We review the search warrant affidavit in its entirety, in a common-sense fashion, giving great deference to the magistrate's decision. *Id.* We consider whether the affidavit supports the "magistrate's decision that there is a 'fair probability' that evidence of the crime will be found in the place or places named in the warrant." *Id.* (citing *Babbell*, 770 P.2d at 991 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1993)).

Thus, rather than examining each of the omissions enumerated by Blaha, we look at the affidavit as a whole to determine whether it established a fair probability that a search would reveal the listed evidence. *Id.* And, in reviewing hearsay statements, including information from confidential informants, we consider the reliability and veracity of the sources. See *id.*

Here, the C.I. did not give information in exchange for anything. More importantly, she was married to a cocaine addict, about whom she legitimately would be concerned. While the C.I. never actually witnessed a cocaine transaction, her husband told her where he bought the cocaine. On two occasions, including one within five days of the execution of the affidavit, she saw her husband enter the apartment and then exit with cocaine, which he either ingested or administered intravenously.

The C.I.'s mother-in-law corroborated in part this information, reporting that her son had a long history of cocaine abuse, and that he had admitted to purchasing cocaine at the subject apartment. The offi-

cer also corroborated in part the C.I.'s information by confirming that the C.I.'s husband had a prior narcotics arrest, and by confirming that the traffic pattern at the subject apartment was consistent with drug trafficking.

Even though there is no direct evidence of drug trafficking, and even though the officer's corroborating evidence is not as thorough as it could have been, given our great deference to the magistrate's decision, and given the totality of the circumstances, the affidavit presented the magistrate with a substantial basis for determining there was a fair probability that the evidence sought would be in the apartment. We therefore affirm the magistrate's determination of probable cause.

## HEARSAY IN AFFIDAVIT

■ Blaha claims the magistrate did not have probable cause to issue the search warrant because most of the C.I.'s statements were hearsay, that is, purported statements by an alleged narcotics user to his wife. Blaha argues that the affidavit contains no statements from anyone with firsthand knowledge of a criminal transaction inside the premises.

"The use of hearsay evidence to establish probable cause does not necessarily undercut the validity of a warrant. If the hearsay is reliable, and there is a substantial basis for giving it credence, it will support the issuance of a warrant." *State v. Nielsen,* 727 P.2d 188, 192 (Utah 1986) (citing *United States v. Harris,* 403 U.S. 573, 580–81, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971)), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987); *accord Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *State v. Purser,* 828 P.2d 515, 517 (Utah App.1992). "For example, reliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information." *Purser,* 828 P.2d at 517.

Here, the C.I.'s information was not given in exchange for anything from the police. The magistrate reasonably inferred that she gave her information because she

was concerned for her drug-addicted husband. The magistrate reasonably inferred the same motive on behalf of the C.I.'s mother-in-law. While the C.I. never directly witnessed a drug transaction, the most likely explanation for the events she did witness was a drug transaction. This explanation is even more likely in light of the C.I.'s husband's admissions to his wife and to his mother, the man's criminal record, and the officer's observations of the traffic patterns at the apartment.

In short, the hearsay evidence contained in the affidavit possesses adequate indicia of reliability. Moreover, corroborating evidence provides the hearsay with a substantial basis for credibility, supporting the issuance of a warrant.

## NO–KNOCK WARRANT

■ Blaha claims the magistrate had no substantial basis to issue a no-knock warrant.

A magistrate may direct that the warrant be no-knock, "upon proof ... that the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given." Utah Code Ann. § 77–23–10(2) (1990). For example, the "small amount of drugs ordinarily found in a residential setting can be easily and quickly destroyed with even the briefest notice." *State v. Rowe,* 806 P.2d 730, 733 (Utah App.1991), *rev'd on other grounds,* 850 P.2d 427 (Utah 1992). Also, the fact that the occupants possess firearms in a house where there is suspected drug trafficking may justify a no-knock warrant. *State v. Rosenbaum,* 845 P.2d 962, 966 (Utah App. 1993). Again, we review the appropriateness of a no-knock provision of a search warrant by viewing the affidavit as a whole, in a common-sense manner. *Id.* at 965.

Blaha claims the affidavit did not specify drugs as an object of the search, nor did it mention that the evidence sought could easily be destroyed. Reviewing the affidavit in a common-sense manner, we reject this claim because the affidavit specifically re-

fers to narcotics in paragraph four. Moreover, we have already noted that narcotics in a residential setting can often be easily and quickly destroyed, thus justifying a no-knock search. *See Rowe*, 806 P.2d at 733.[1]

We conclude the magistrate had a substantial basis to authorize a no-knock search. Accordingly, we need not address Blaha's other challenges to the no-knock aspect of the warrant. Also, we need not decide whether the magistrate correctly determined that the warrant could be served at night because the warrant was served during the day.[2]

## CONCLUSION

Viewing the affidavit in its entirety and in a common-sense fashion, we conclude that the magistrate did not err in determining (1) the C.I.'s information was reliable; (2) there existed a fair probability that the items would be found in the apartment; and (3) that a no-knock warrant was appropriate.

Affirmed.

GREENWOOD and ORME, JJ., concur.

---

1. Blaha also claims the affidavit listed no safety concerns specific to the case. Here, the affidavit reported that the occupants had threatened the C.I.'s husband, and that the officer believed that weapons may be readily available to the occupants of the apartment.

  The most problematic aspect of the affidavit is that the officer sought to justify the no-knock warrant on the basis that he believed that all searches involving drug trafficking should be no-knock. This case does not require that we adopt such a broad rule because the affidavit contains enough information specific to the case

to indicate that the objects of the search could easily have been destroyed or hidden and that persons involved could have been subject to physical harm if notice were given. *See* Utah Code Ann. § 77–23–10(2).

2. While the warrant arguably was ambiguous because it said "any time of the day," rather than "any time of the day or night," as specified in Utah Code Ann. § 77–23–5 (1990), we agree with the trial judge that the issuance of night time service of the warrant was moot because it was actually served during the day.